IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DAVID PETERS,

                              Petitioner,              Civil Action No.
                                                       9:10-CV-0116 (GLS/DEP)

              v.

SUPERINTENDENT, Sing Sing Correctional
Facility,

                              Respondent.

_____

APPEARANCES:                              OF COUNSEL:

FOR PETITIONER:

DAVID PETERS, *Pro Se*
06-A-5776
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

FOR RESPONDENT:

HON. ERIC T. SCHNEIDERMAN          PRISCILLA I. STEWARD, ESQ.
Attorney General of               Assistant Attorney General
the State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Petitioner David Peters, a New York State prison inmate as a result of a 2006 murder conviction entered in Onondaga County Court based upon a guilty plea, has commenced this proceeding pursuant to 28 U.S.C. § 2254 requesting federal habeas intervention.  At the heart of Peters' petition is his claim that at the time his plea was entered he suffered from a mental defect and was medicated, and that the plea therefore was not knowing and voluntary.  Petitioner also challenges the validity of a waiver of appeal agreed to at the time his plea was entered, resulting in a state appellate court decision declining to review the legal sufficiency of his plea.

In answer to the petition, respondent argues that petitioner's mental defect and medication claims were not presented in the first instance to the state's highest court, and thus are both unexhausted and procedurally barred.  Respondent further argues that in any event petitioner's substantive claims lack merit.

Having carefully considered the matter, I conclude that the claims now raised are procedurally forfeited, and in any event lack merit, and therefore recommend that Peters' petition be dismissed.

I.    BACKGROUND

In 2006, petitioner and three co-defendants were indicted by an Onondaga County Grand Jury and charged with second degree murder, first degree burglary, attempted robbery in the first degree, and second degree assault.  State Court Records (Dkt. No. 9) Exh. C at p. 4.  That indictment grew out of an incident on May 31, 2006 when, during the course of a burglary, a female victim was stabbed to death and two other occupants of the subject dwelling were injured.  *Id.; see also* State Court Records (Dkt. No. 9) Exh. D at p. 2.

At a hearing conducted by Onondaga County Court Judge William D. Walsh on August 1, 2006, and attended by the prosecution, the petitioner, his counsel, and his mother, Peters indicated a willingness to plead guilty to a single count of murder in the second degree, in exchange for a promised indeterminate prison sentence of fifteen years to life.  State Court Records (Dkt. No. 9) Exh. A at pp. 2-4.  A plea allocution ensued, during which the trial court advised the petitioner of his rights and fully explained the consequences of his plea.  *Id.* at pp. 4-8.

During the plea proceedings the trial court specifically inquired whether petitioner suffered from any physical or mental conditions or had consumed any drugs or alcohol that would prevent him from

3

understanding the proceedings; in response, petitioner stated "I got [sic] mental problems." *Id.* at p. 5.  When asked by the court later during the proceedings to elaborate, petitioner and his counsel both stated that Peters was taking medication to assist him in sleeping but assured the court that he nonetheless had a good understanding of the proceedings, and that his condition did not impair his ability to comprehend them.  State Court Records (Dkt. No. 9) Exh. A at pp. 7-8.   As part of the plea agreement, in which the court committed itself to imposing a sentence of fifteen years to life imprisonment, Peters promised to waive his right of appeal and to execute a written waiver to that effect, and the consequences of that waiver were explained to him by the trial court.  *Id.* at pp. 10-11.  At the close of the allocution petitioner entered a plea of guilty to second degree murder, in violation of New York Penal Law § 125.25 (3).  *Id.* at pp. 12-13.

Peters was sentenced in connection with his conviction on October 23, 2006.  State Court Records (Dkt. No. 9) Exh. B.  During the sentencing Peters' counsel did not challenge the validity of his plea, although he did make reference to his client's mental condition as a potential mitigating factor to be considered in connection with sentencing. *Id.* at pp. 2-5.  At the close of the sentencing proceedings County Court

Judge Walsh imposed the promised sentence of between fifteen years and life imprisonment, and required the defendant to execute the waiver of appeal discussed at the time his plea was entered.  *Id.* at pp. 5-6.

Despite his waiver, petitioner appealed his conviction to the New York State Supreme Court Appellate Division, Fourth Judicial Department. State Court Records (Dkt. No. 9) Exh. C.  In that appeal Peters raised two issues, arguing that the waiver of appeal was not knowing and voluntary and therefore should not be enforced, and additionally that his plea was invalid since he was not required to recite the underlying facts giving rise to the charge which he admitted.

Petitioner's conviction was affirmed by the Fourth Department on February 6, 2009.  *People v. Peters,* 59 A.D.3d 928, 873 N.Y.S.2d 397 (4th Dep't 2009).  In its decision the appellate court concluded, based upon the record, that petitioner's waiver of appeal was voluntary, knowing, and intelligent and that his claim of inadequacy of the plea allocution was precluded by the waiver of appeal, and in any event was not properly preserved for review.[1]  *Id.*  Leave to appeal that determination to the New

---

[1]     In his brief to the Fourth Department the petitioner acknowledged that the question of whether his plea was knowing, voluntary, and intelligent was not presented to the trial court. State Court Records (Dkt. No. 9) Exh. C at p. 3.  This fact led the Fourth Department to conclude, as an alternative basis for its determination, that the

(continued...)

York Court of Appeals was denied on April 9, 2009.  *People v. Peters,* 12 N.Y.3d 820, 881 N.Y.S.2d 27 (2009) (Table).  It does not appear that petitioner has instituted any collateral state court challenges to his conviction.

## II.    PROCEDURAL HISTORY

Petitioner commenced this proceeding on February 1, 2010, and was thereafter granted leave to proceed *in forma pauperis*.  Dkt. Nos. 1, 4.  Represented by the New York State Attorney General the named respondent, the superintendent of the correctional facility in which Peters is currently confined, thereafter filed a response, accompanied by a memorandum of law and the relevant state court records, all on June 4, 2010.[2]  Dkt. Nos. 7-9.  In his opposition to Peters' petition, respondent

_____

[1](...continued)
petitioner had failed to preserve the challenge for review.  *Peters*, 59 A.D.3d at 928, 873 N.Y.S.2d 397.  It could be argued that this finding constitutes an adequate and independent ground for rejection of petitioner's constitutional argument, and precludes this court from engaging in habeas review with regard to that issue.  *Coleman v. Thompson,* 501 U.S. 722, 749-50, 111 S. Ct. 2546 (1991); *Fama v. Comm. of Corr. Servs.,* 235 F.3d 804, 809-11 (2d Cir. 2000).  Despite that state appellate court ruling, however, respondent did not assert the adequate and independent state ground doctrine as a defense in this proceeding, and that defense has therefore been waived.  *Lear v. Pool*, 711 F. Supp. 2d 288, 294 (W.D.N.Y. 2010) (citing *Grey v. Netherland*, 518 U.S. 152, 165-66, 116 S. Ct. 2074 (1996)).

[2]      The court appreciates the fact that the state court records submitted were well indexed and conveniently organized, but suggests that in the future, for ease of reference, that they be sequentially Bate stamped or paginated in some similar fashion.

argues that the claim that petitioner's mental condition negates the validity of his guilty plea is both unexhausted and lacking in merit.  Dkt. No. 8. Respondent's opposition does not directly address petitioner's second claim, in which he challenges the validity of his waiver of appeal.  *Id.*

Peters' petition, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Exhaustion of Remedies

While the petitioner has raised the legal sufficiency of his plea in both this proceeding and his direct state court appeal, the focus of that argument presented in the two forums has been distinctly different. Peters' argument to the Fourth Department that his plea was not knowing, voluntary, and intelligent was based upon the failure of the trial court during his plea colloquy to require him to recite the factual underpinnings of the charge to which he was pleading guilty.  In this proceeding, by contrast, the thrust of petitioner's claim is addressed to his mental condition and the effects of his medication at the time his plea was entered, arguing that because of that combination of factors he "was

7

incompetent when he pleaded guilty. . .".  *See* Petition (Dkt. No. 1) §

12(A).  Respondent maintains that petitioner's claim is therefore

unexhausted, but now procedurally forfeited.

Prior to seeking federal habeas relief, a petitioner must exhaust

available state remedies, or establish either an absence of available state

remedies or that such remedies cannot adequately protect his or her

rights.  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28

U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994),

*cert. denied*, 515 U.S. 1118, 115 S. Ct. 2269 (1995).  The exhaustion

doctrine recognizes "respect for our dual judicial system and concern for

harmonious relations between the two adjudicatory institutions."  *Daye v.*

*Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982).  "Comity

concerns lie at the core of the exhaustion requirement."  *Galdamez v.*

*Keane*, 394 F.3d 68, 72 (2d Cir.), *cert. denied, sub nom. Galdamez v.*

*Fischer*, 544 U.S. 1025, 125 S. Ct. 1996 (2005).  Though both federal and

state courts are charged with securing a state criminal defendant's federal

rights, the state courts must initially be given the opportunity to consider

and correct any violations of federal law.  *Id.*  "The chief purposes of the

exhaustion doctrine would be frustrated if the federal habeas court were to

rule on a claim whose fundamental legal basis was substantially different

from that asserted in state court." *Daye,* 696 F.2d at 192 (footnote omitted).

This exhaustion requirement is satisfied if the federal claim has been "'fairly presented'" to the state courts. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971)). A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192.

When a claim has never been presented to a state court, a federal court may find that there is an absence of available state corrective process under § 2254(b) "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) (federal court may address merits of a habeas petition containing unexhausted claims where there is no further state proceeding for petitioner to pursue or where further pursuit would be futile), *cert. denied*, 532 U.S. 943, 121 S. Ct. 1404 (2001). As such, I must determine

whether it would be futile for petitioner to present the newly-minted theory regarding the indictment on which his plea was based to the state courts.

Petitioner cannot now file an appeal with the Fourth Department in order to advance his claim regarding his claim that he was not mentally competent when his plea was entered, since in New York a defendant is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio*, 269 F.3d at 91. Moreover, since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing New York Crim. Proc. Law ("CPL") § 440.10(2)(c)), petitioner could not now properly raise this claim, which is based upon the record, in a CPL Article 440 motion to vacate his conviction. *Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054, 115 S. Ct. 1436 (1995). The claim is therefore "deemed exhausted" for purposes of petitioner's habeas application. *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, No. 00-CV-5673, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).[3]

Although petitioner's mental competence claim is "deemed

---

[3]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

exhausted," it is also procedurally defaulted.  *See Aparicio*, 269 F.3d at 90, 96.  Accordingly, a federal court may not engage in habeas review of the claim unless the petitioner demonstrates either 1) both good cause for and actual prejudice resulting from his procedural default, or 2) that the denial of habeas relief would leave unremedied a fundamental miscarriage of justice.  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000); *Garcia v. Lewis*, 188 F.3d 71, 76-77 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995).  Under this second exception, which is both exacting and intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[,]" *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649 (1986); *see also House v. Bell*, 547 U.S. 518, 536, 126 S. Ct. 2064, 2076 (2006); *Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994), "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'"  *Murray*, 477 U.S. at 495, 106 S. Ct. at 2649 (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct. 1558, 1576 (1982)).

　　　To establish "cause" sufficient to excuse a procedural default, a

petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule.  *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 2566-67 (1991) (citing *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645); *Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999) (citing, *inter alia*, *Coleman*).  Examples of such external mitigating circumstances can include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.[4]  *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645.  When a petitioner has failed to establish adequate cause for his or her procedural default, the court need not go on to also examine the issue of prejudice, since federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. March 21, 2006) (McCurn, S.J.) (citing *Stepney*); *Staley v. Greiner*, No. 01 Civ. 6165, 2003 WL 470568, at *7 (S.D.N.Y. Feb. 6, 2003) (citing *Stepney*).  In such a case, absent evidence to show the petitioner's

---

[4]      It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'"  *Coleman*, 501 U.S. at 753, 111 S. Ct. at 2566-67 (quoting *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645).

innocence of the crime of conviction, no basis is presented to conclude that the failure to consider the merits of the federal claim would result in a fundamental miscarriage of justice, which has been interpreted as amounting to "an unjust incarceration." *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000) (citing *Murray*, 477 U.S. at 496, 106 S. Ct. 2639).

In this instance, petitioner has offered nothing to justify his failure to present the claim now raised to the state appellate court. The court therefore need not examine whether petitioner will suffer any actual prejudice resulting from the procedural default. Similarly, addressing the second exception to the procedural forfeiture rule, petitioner has offered no evidence of his actual innocence of the crime of conviction, to which he pleaded guilty.[5] Under these circumstances, I recommend a finding that petitioner's primary argument in support of his request for habeas relief – that he was incompetent to enter his guilty plea due to his mental condition and medicated state – is both unexhausted and procedurally barred.

---

[5]     While petitioner argued to the state appellate court the unfairness of his plea, given the treatment of his co-defendants and his limited role in the incident giving rise to his plea, he has offered nothing to suggest his actual innocence of the charge to which his plea was entered.

B.   Standard of Review

Before turning to the merits of petitioner's habeas claims, I first address the standard of review applicable in this case.

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought about significant new limitations on the power of a federal court to grant habeas relief to a state court prisoner under 28 U.S.C. § 2254.  Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)) (internal quotes omitted). Significantly, a federal court may not grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

14

> 2) resulted in a decision that was
> based on an unreasonable
> determination of the facts in light of the
> evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d); *see also Thibodeau v. Portuondo*, 486 F.3d 61, 65

(2d Cir. 2007); *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir.), *cert. denied*, 534

U.S. 886, 122 S. Ct. 197 (2001); *Boyette*, 246 F.3d at 88.  When applying

this test, the Second Circuit has noted that

> [u]nder AEDPA, we ask three questions to
> determine whether a federal court may grant
> habeas relief: (1) Was the principle of Supreme
> Court case law relied upon in the habeas petition
> "clearly established" when the state court ruled?
> (2) If so, was the state court's decision "contrary
> to" that established Supreme Court precedent? (3)
> If not, did the state court's decision constitute an
> "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v.*

*Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000) (citing *Williams v. Taylor*, 529

U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000))).

Because the AEDPA's restriction on federal habeas power was

premised in no small part upon the duty of state courts to uphold the

Constitution and faithfully apply federal laws, the AEDPA's exacting

review standards apply only to federal claims which have been actually

15

adjudicated on the merits in the state court.  *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001).  Specifically, as the Second Circuit explained in *Sellan v. Kuhlman*, "[f]or the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."  261 F.3d 303, 312 (2d Cir. 2001); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (citing *Sellan*), *cert. denied sub nom.*, *Jimenez v. Graham*, 549 U.S. 1133, 127 S. Ct. 976 (2007).  Significantly, the Second Circuit further held that when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – *even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.*"  *Sellan*, 261 F.3d at 312 (emphasis added).[6,7]

---

[6]     In the past, when wrestling with interpretation and application of the AEDPA's deference standard the Second Circuit had suggested, although leaving open the question, that deference under section 2254(d) is not mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim in a manner adequate to justify deference under AEDPA, in which case pre-AEDPA standards would apply. *Washington*, 255 F.3d at 52-55; *see also Noble*, 246 F.3d at 98.   That court clarified in *Sellan*, however, that the question of whether or not a state court makes specific reference to a constitutional principle is not controlling.

[7]     In his opinion in *Sellan*, Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly

(continued...)

When a state court's decision is found to have been decided "on the merits", that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.  Moreover, a federal court engaged in habeas review must also determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable".  *Sellan*, 261 F.3d at 315 (quoting *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521 (O'Connor, J.)).  The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great[.]"  *Francis S.*, 221 F.3d at 111.

C.    Merits Of Petitioner's Waiver of Appeal Claim

In the second ground of his petition, the only one which is not procedurally forfeited, Peters argues that the waiver of appeal executed by him in connection with his plea and subsequent sentencing is invalid

---

[7](...continued)
enhance a federal court's ability, on petition for habeas review, to apply the AEDPA deference standard.  *Sellan*, 261 F.3d at 312.  He noted, however, that a state court's failure to provide such useful guidance does not obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so.  *Id.*

17

and should not have precluded his right to challenge the validity of his

plea.  While citing the Fourteenth Amendment, the petition does not

otherwise elaborate on the basis for this claim.

In its decision, the Fourth Department concluded that petitioner's

waiver of appeal, entered in conjunction with his guilty plea, was knowing,

voluntary, and intelligent and precludes review of the legal sufficiency of

the plea itself.  *People v. Peters,* 59 A.D.3d 928, 873 N.Y.S.2d 397 (4th

Dep't 2009).   The court must therefore determine whether this finding is

contrary to or represents an unreasonable application of clearly

established Supreme Court precedent.

> 1.   Clearly Established Supreme Court Precedent

To determine the relevant Supreme Court authority to invoke when

analyzing the sufficiency of petitioner's waiver of appeal, I have looked for

guidance to the standard governing the acceptance of guilty pleas

generally – a standard which is neither recently evolved nor controversial.

"The longstanding test for determining the validity of a guilty plea is

'whether the plea represents a voluntary and intelligent choice among the

alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474

U.S. 52, 56, 106 S. Ct. 366, 369 (1985) (quoting *North Carolina v. Alford*,

400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970) (citations omitted)); *see also Parke v. Raley*, 506 U.S. 20, 28-29, 113 S. Ct. 517, 523 (1992) (a plea is valid when it is both knowingly and voluntarily made); *Boykin v. Alabama*, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 1711-12 (1969) (the United States Constitution requires that guilty plea be intelligently and voluntarily entered).  A knowing plea is entered "'with understanding of the nature of the charge and the consequences of the plea.'" *Santobello v. New York*, 404 U.S. 257, 261 n.1, 92 S. Ct. 495, 498 n.1 (1971) (quoting Fed. R. Crim. P. 11); *see Martinez v. Costello*, No. 03 CIV 2763, 2004 WL 26306, at *5 (S.D.N.Y. Jan. 5, 2004) (citing *Santobello* and Fed. R. Crim. P. 11); *see also Hanson v. Phillips*, 442 F.3d 789, 798 (2d Cir. 2006).

Applying this standard, to establish that a criminal defendant's guilty plea was knowingly, intelligently, and voluntarily entered a court must find, based upon the record of the relevant plea proceedings, that he or she 1) was competent to proceed and was fully aware of the nature of the charges faced; 2) had a rational and factual understanding of the proceedings; and, 3) was cognizant of the constitutional protections relinquished upon entry of the plea.  *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004); *Matusiak v. Kelly*, 786 F.2d 536, 543 (2d Cir.), *cert.*

19

*dismissed*, 479 U.S. 805, 107 S. Ct. 248 (1986).  While "the question of whether a plea of guilty has been entered voluntarily within the meaning of the Constitution is often a complex one that involves mixed questions of law and fact[,]" the ultimate issue of whether a plea represents an effective waiver of federal Constitutional rights is controlled by federal law. *Oyague*, 393 F.3d at 104.

"[W]aivers of the right to appeal a sentence, like waivers of constitutional rights, are invalid unless they are voluntary and knowing." *United States v. Ready*, 82 F. 3d 551, 556 (2d Cir. 1996).  Accordingly, for a defendant's agreement in a plea to give up his or her right to appeal, the record must clearly demonstrate that the waiver was both knowing, "'in the sense that the defendant fully understood the potential consequences of his waiver'", and voluntary.  *United States v. Monzon*, 359 F.3d 110 (2d Cir. 2004) (quoting *Ready*, 82 F. 3d at 557) (other citations omitted).

2.    Contrary To Or Unreasonable Application Of
      Clearly Established Supreme Court Precedent

When judged against this standard, the evidence in this case is fully supportive of the Fourth Department's finding that the petitioner's waiver of appeal was knowing, voluntary, and intelligent.  The plea agreement which included the waiver as an element was the product of negotiations

20

involving the court, the prosecution, and Peters and his counsel,

conducted in the presence of the petitioner's mother.  *See* State Court

Records (Dkt. No. 9) Exh. A at pp. 2-4; *see also id.* at p. 9.  Petitioner's

appeal rights were described to him by the trial court; Judge Walsh

explicitly confirmed petitioner's understanding that "by waiving [his] right to

appeal, if later on [he is] not happy with [his] plea or sentence [he] cannot

ask a higher Court to reverse or undo what will be done here today and on

the date of sentence."  *Id.* at p. 10.

       Petitioner's understanding of the court proceedings and his

competence to proceed was also probed by Judge Walsh, who asked

Peters whether he had any "physical or mental problems or consumed

any alcohol that would prevent [him] from understanding [the]

proceedings."  State Court Records (Dkt. No. 9) Exh. A at p. 5.  After

petitioner responded that he had mental problems, the court inquired

further, determining from petitioner that there was nothing that would

prevent him from understanding the proceedings, and asked whether he

had "a good understanding" of what was being accomplished, to which he

responded in the affirmative.  *Id.* at pp. 7-8.  Based upon the plea

colloquy, the court determined that the petitioner understood "the charges,

21

his rights, and the nature and consequences of his plea of guilty." *Id.* at p. 13.

Against this backdrop, the finding of the state appellate court regarding the legal sufficiency of petitioner's waiver of any right of appeal does not appear to have been either contrary to or an unreasonable application of clearly established Supreme Court precedent.

D.    Merits of Petitioner's Guilty Plea Claim

The first ground of Peters' petition challenges the validity of his guilty plea, arguing that his medicated condition and mental disabilities rendered him incapable of entering a valid plea.  Although this claim was not adjudicated by the state courts and is now procedurally forfeited, I will nonetheless address the merits of the claim.

The overarching principles associated with the entry of a knowing, voluntary, and intelligent guilty plea are well-established, and were set out earlier in this report.[8]  In order to enter a constitutionally valid guilty plea a defendant must be competent to proceed, and manifest an awareness of the nature of the charges faced as well as an understanding of the proceedings and the constitutional protections forfeited by entering the

---

[8]    *See* pp. 18-21, *ante*.

plea.  *Oyague,* 393 F.3d at 106.

Without question the prosecution of criminal charges against an incompetent defendant represents violation of due process.  *Medina v. California,* 505 U.S. 437, 439, 112 S. Ct. 2572, 2574 (1992).  This principle applies with equal force to the competency of a defendant to enter a knowing, intelligent and voluntary plea.  *Godinez v. Moran*, 509 U.S. 389, 400-401, 113 S. Ct. 2680, 2687 (1993); *Oyague*, 393 F.3d at 106 ("for [a] plea to be voluntary, '[i]t is axiomatic' that the defendant must at least be competent to proceed.") (quoting *United States v. Masthers,* 539 F.2d 721, 725 (D.C. Cir. 1976); *see also Lear v. Poole*, 711 F. Supp. 2d 288, 294 (W.D.N.Y. 2010).  A defendant is competent to stand trial if he or she has "sufficient present ability to consult with his [or her] lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him [or her]." *Godinez,* 509 U.S. at 396, 113 S. Ct. at 2685 (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 789 (1960) (per curiam)).

As was discussed above, I have carefully reviewed the record of proceedings associated with the entry of petitioner's guilty plea and find no basis to conclude that he was not competent to proceed and did not

have the requisite understanding of the proceedings against him.  Peters

assured the court that he was entering his guilty plea freely and voluntarily

and because he was guilty.  State Court Records (Dkt. No. 9) Exh. A at p.

5-8.  Before entering his plea petitioner was reminded by the trial court of

the constitutional protections which he was waiving by entering his plea.

*Id.* at pp. 6-7.  When asked specifically about his mental problems, Peters

responded that he had a "good understanding" of the proceedings.  *Id.* at

pp. 6-8.  At the conclusion of the colloquy petitioner entered the plea of

guilty to murder in the second degree, in satisfaction of the charges set

forth in the indictment.  *Id.* at p. 13.  At the time of petitioner's sentencing

nearly three months later, neither Peters nor his attorney made any

reference to his mental competency or ability to understand the

proceedings against him.  *Id.* at Exh. B.

Under these circumstances, I find that the record fully supports the

conclusion that at the time of entry of his guilty plea Peters had an

adequate rational and factual understanding of the proceedings against

him, and that his plea was knowing, voluntary, and intelligent.  *Lear* , 711

F. Supp. 2d at 295-96.  I therefore recommend that should the court

decide to address the merits of petitioner's guilty plea claim,

notwithstanding the fact that it is procedurally barred, a finding be made

that the guilty plea passes constitutional muster.

### E.   Certificate of Appealibility

In order for a petitioner to appeal a final order denying habeas relief

by a state prisoner, he or she must receive a certificate of appealability

("COA").  28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)

("unless a circuit justice or a circuit or district judge issues a certificate of

appealability under 28 U.S.C. § 2253(c)", an appeal may not be taken

from the denial of a habeas petitioner under section 2254).   A COA may

only issue "if the applicant has made a substantial showing of the denial of

a constitutional right."[9]  28 U.S.C. § 2253(c)(2).  In this case I conclude

that the petitioner has not a made substantial showing of the denial of a

constitutional right, and therefore recommend against the granting of the

COA.

---

[9]      In a case such as this, where dismissal of a petition is based wholly or in part on a procedural ground, a petitioner is eligible for a COA upon a showing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 and n. 4, 103 S. Ct. 3383, 3395 n.4 (1983)); *see also Bethea v. Girdich*, 293 F.3d 577, 577-78 (2d Cir. 2002).  As can be seen, this standard is comprised of two prongs, one of which is directed on the constitutional claims set forth in the petition, while the other focuses upon the basis for the court's procedural holding. *Id.*

IV.   <u>SUMMARY AND RECOMMENDATION</u>

The principal ground asserted by petitioner for the granting of

habeas relief – that his guilty plea was not knowing, voluntary, and

intelligent in light of his medicated condition and mental deficiency at the

time of allocution – is both unexhausted and now procedurally forfeited

based upon Peters' failure to present the argument to the state courts in

his direct appeal from his conviction.  Addressing the merits of the two

grounds asserted, after having carefully reviewed the transcript of

petitioners' plea allocution, I find that his claim that the guilty plea and

waiver of appeal were not knowing, voluntary, or intelligent lack merit and

that the state court's determination with regard to the waiver of appeal

issue, when reviewed under the governing, deferential AEDPA standard,

was neither contrary to nor an unreasonable application of clearly

established Supreme Court precedent.  Accordingly, it is hereby

respectfully

RECOMMENDED that the petition in this matter be DENIED and

DISMISSED in all respects; and it is further hereby

RECOMMENDED, based upon my finding that Peters has not made

a "substantial showing of the denial of a constitutional right" pursuant to

28 U.S.C. § 2253(c)(2), that a certificate of appealability not issue with respect to either of the claims set forth in his petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     October 19, 2011
           Syracuse, NY

27



Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Chanel SENOR, Petitioner,
v.
Charles GREINER, Supt., Respondent.
**No. 00-CV-5673JG.**

Sept. 18, 2002.

Following affirmance of his convictions for second-degree murder and criminal possession of a weapon, state prisoner filed petition for federal habeas corpus relief. The District Court, Gleeson, J., held that: (1) prisoner's petition was time-barred; (2) prisoner failed to demonstrate that his trial counsel's actions or inactions amounted to constitutionally inadequate performance; (3) prisoner failed to demonstrate that his appellate counsel's actions amounted to constitutionally inadequate performance; (4) claim that police seized prisoner without probable cause was barred from federal review; (5) even if court were to consider claim of lack of probable cause, the claim lacked merit; (6) claim that prisoner did not voluntarily accompany police to the precinct was barred from habeas review; (7) even if prosecutor's questioning of prisoner about his prior drug conviction was a *Sandoval* violation, prisoner failed to show that it deprived him of a constitutionally recognized right; and (8) claim regarding the alleged *Sandoval* violation was procedurally defaulted.

Petition denied.

West Headnotes

**[1] Habeas Corpus 197** 603

197 Habeas Corpus
   197III Jurisdiction, Proceedings, and Relief
     197III(A) In General
      197k603 k. Laches or Delay. Most Cited Cases
State prisoner's petition for federal habeas corpus relief was time-barred; although one-year grace period from the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA) was tolled during periods that prisoner's motions to reargue or appeal his previous adverse rulings were pending in state appellate courts, some 1,184 days passed from the AEDPA's effective date until the earliest date on which prisoner could have been credited with filing his petition. 28 U.S.C.A. § 2244(d)(1)(a).

**[2] Criminal Law 110** 1930

110 Criminal Law
   110XXXI Counsel
     110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
       110k1921 Introduction of and Objections to Evidence at Trial
        110k1930 k. Identification. Most Cited Cases
   (Formerly 110k641.13(6))
Trial counsel's failure to request *Dunaway* hearing to challenge lineup identifications, after purportedly eliciting evidence that police stopped defendant without probable cause, did not amount to constitutionally inadequate performance; only witness who testified at *Wade* hearing mentioned nothing to suggest that he and his partner had stopped and questioned defendant improperly, defendant

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

pointed to no evidence in attorney's possession at conclusion of *Wade* hearing that would have sustained his claim that police lacked probable cause to detain him, and defendant failed to show that, had *Dunaway* hearing been requested, reasonable probability existed that court would have granted hearing and suppressed lineup identifications. U.S.C.A. Const.Amend. 6.

**[3]** Criminal Law 110 ☞ 1951

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1951 k. Deliberations and Verdict.
Most Cited Cases
    (Formerly 110k641.13(2.1))
Trial counsel's failure to move to set aside verdict, after defendant alerted him to possibility that defendant had known one of his jurors in high school, did not amount to constitutionally inadequate performance; defendant's claim that he knew juror was unsupported, court could not conceive of how claim, even if true, afforded a basis for relief for defendant, and defendant failed to show that, had attorney moved to set aside verdict, court would have granted the motion. U.S.C.A. Const.Amend. 6.

**[4]** Criminal Law 110 ☞ 1968

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1966 Appeal
                    110k1968 k. Preservation of Error for Appeal. Most Cited Cases
    (Formerly 110k641.13(7))

Defendant failed to demonstrate that appellate counsel's failure to brief on appeal defendant's claim of lack of probable cause with respect to his arrest amounted to constitutionally inadequate performance; claim was both unpreserved for appellate review and meritless, and so the decision to forgo pursuing it on appeal did not fall below any standard of reasonableness, and, in any event, appellate court considered and rejected that very claim when defendant asserted it in his pro se supplemental brief. U.S.C.A. Const.Amend. 6.

**[5]** Habeas Corpus 197 ☞ 366

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k362 Particular Remedies or Proceedings
                    197k366 k. Direct Review; Appeal or Error. Most Cited Cases

Habeas Corpus 197 ☞ 378

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k374 Availability and Effectiveness of State Remedies
                    197k378 k. Availability at Time of Petition. Most Cited Cases
Federal habeas petitioner's claim, that police seized him

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

without probable cause, was barred from federal review where petitioner failed to exhaust it in the state courts; claim was presented on direct appeal in petitioner's pro se supplemental brief, appellate court rejected claim as either not preserved or without merit, petitioner failed to apply for leave to appeal from the affirmance of his conviction, claim thus was unexhausted, time limit for exhausting claim had expired, petitioner failed to show cause and resulting prejudice for failure to appeal decision affirming his conviction, and federal court's refusal to consider claim would not result in miscarriage of justice.

**[6] Habeas Corpus 197 🔑 366**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k362 Particular Remedies or Proceedings
                    197k366 k. Direct Review; Appeal or Error. Most Cited Cases

**Habeas Corpus 197 🔑 401**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)5 Availability of Remedy Despite Procedural Default or Want of Exhaustion
                197k401 k. In General. Most Cited Cases
Federal habeas petitioner's claim, that he did not voluntarily accompany arresting officers to the precinct, was barred from federal habeas review where the state

court denied it based on a state procedural default, which constituted an independent and adequate state ground; state court held that claim was procedurally barred under state law because petitioner based it on matters that appeared in the record but neither raised the claim on direct appeal nor offered a reasonable excuse for having failed to do so, appellate court denied leave to appeal matter, petitioner did not show cause and resulting prejudice for the default, and miscarriage of justice would not result from federal court's failure to review claim.

**[7] Habeas Corpus 197 🔑 495**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k495 k. Witnesses; Examination. Most Cited Cases
Even if prosecutor's questioning of petitioner about his prior drug conviction was a *Sandoval* violation, petitioner failed to show that it deprived him of a constitutionally recognized right, as required for the evidentiary error to be cognizable under federal habeas corpus review; given abundance of evidence pointing to petitioner's guilt, petitioner failed to show that the ruling influenced the jury's verdict in any way, and petitioner's claim of a *Sandoval* violation lacked merit, as defense counsel opened the door to prosecutor's questioning, and it was defense counsel, not prosecutor, who elicited the facts underlying petitioner's prior felony conviction.

**[8] Habeas Corpus 197 🔑 366**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

State Prisoners
        197I(D)4 Sufficiency of Presentation of Issue or
Utilization of State Remedy
                197k362 Particular Remedies or
Proceedings
                197k366 k. Direct Review; Appeal or
Error. Most Cited Cases

**Habeas Corpus 197 👈 368.1**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by
State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or
Utilization of State Remedy
                197k368 Necessity for Repetition or Pursuit
of Several Remedies
                    197k368.1 k. In General. Most Cited
Cases

**Habeas Corpus 197 👈 378**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by
State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or
Utilization of State Remedy
                197k374 Availability and Effectiveness of
State Remedies
                    197k378 k. Availability at Time of
Petition. Most Cited Cases
Federal habeas petitioner's claim, that prosecutor's
questioning of him constituted a *Sandoval* violation, was
procedurally defaulted; petitioner asserted claim on direct
appeal, but failed to include it in his application for leave

to appeal further or in any of his other motions, so that
claim was unexhausted, claim could no longer be
exhausted as 30-day period to make application for leave
to appeal had expired, petitioner failed to show cause and
resulting prejudice, and federal court's failure to consider
claim would not result in miscarriage of justice.
Chanel Senor, Great Meadow Correctional Facility,
Comstock, Petitioner Pro Se.

Charles J. Hynes, District Attorney, Kings County,
Brooklyn, By Victor Barall, Assistant District Attorney,
for Respondent.

MEMORANDUM AND ORDER

GLEESON, District J.

**\*1** On January 10, 1994, a jury in Kings County found
petitioner Chanel Senor guilty of murder in the second
degree (N.Y. Penal Law § 125.25[1] ) and criminal
possession of a weapon in the second degree (N.Y. Penal
Law § 265.03). Senor was sentenced to concurrent terms
of imprisonment of twenty years to life for the murder
conviction and two to six years for the weapon possession
conviction. He is currently incarcerated pursuant to that
judgment. He now petitions this Court for a writ of habeas
corpus pursuant to 28 U.S.C. § 2254, asserting the
following claims: (1) his trial counsel failed to provide
him effective assistance; (2) his appellate counsel failed to
provide him effective assistance; (3) the police seized him
without probable cause, violating his Fourth Amendment
rights; (4) he did not voluntarily consent to accompany the
arresting officers to the precinct; and (5) the prosecution's
failure to turn over a prior statement of a prospective
witness and its violation of the court's ruling in a pre-trial
hearing deprived him of his right to a fair trial.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

For the reasons set forth below, the petition is denied.

BACKGROUND

On the evening of January 10, 1991, Senor, carrying two guns, approached Queran Horton, Nekia Washington, and Daverson Maynard as they were walking in front of 1184 Halsey Street in Brooklyn. Senor pointed one gun at Maynard's chest and the other at Horton's back. Upon feeling the gun in his back, Horton turned around, and Senor shot him in the chest, killing him. Senor then fled.

Detective Anthony Burzotta, investigating the crime, subsequently composed a general description of the individual who shot Horton based on information provided by Maynard and another witness, Roberto Colon. He also learned that a man matching the description of the shooter frequented the corner of Knickerbocker and Putnam Avenues, in Brooklyn. On January 30, 1991, Detective Burzotta went with his partner to that location, where they noticed Senor, who appeared to fit the description of the shooter. Detective Burzotta and his partner stopped Senor and questioned him. They then brought Senor to the precinct station house, where they placed him in two separate lineups. From those lineups, Washington and Maynard independently identified Senor as the individual who shot Horton. Burzotta consequently arrested Senor, and the Kings County District Attorney charged him with murder in the second degree and criminal possession of a weapon in the second and third degrees.

Senor went to trial on these charges in July 1992. The jury deadlocked, and on July 10, 1992, the trial court declared a mistrial. In January 1994, Senor faced a second trial on the same charges. At the conclusion of that trial, the jury found Senor guilty of murder in the second degree and criminal possession of a weapon in the second degree. The

court sentenced him as described above.

On February 3, 1994, Senor filed a timely notice of appeal, arguing that (1) the prosecution's failure to turn over a prospective witness's prior statement deprived him of a fair trial; (2) when cross-examining Senor, the prosecution violated the court's pre-trial ruling, thereby depriving him of a fair trial; and (3) the murder conviction was against the weight of the evidence. Senor later filed a *pro se* supplemental brief claiming that (1) the police seized him in violation of his Fourth Amendment rights when they surrounded him without probable cause or exigency and took him to the precinct, and (2) the police testimony regarding his arrest was unworthy of belief due to material inconsistencies. On November 6, 1995, the Appellate Division affirmed Senor's judgment of conviction, finding that the verdict was not against the weight of the evidence and that Senor's remaining claims, including those raised in his *pro se* supplemental brief, were either unpreserved for appellate review or without merit. *See People v. Senor,* 221 A.D.2d 384, 635 N.Y.S.2d 480 (2d Dep't 1995).[FN1]

> FN1. Senor states that he sought leave to appeal the Appellate Division's November 6, 1995 decision affirming his conviction. As support, he cites a certificate from the New York Court of Appeals, dated June 19, 1996, that denies him leave to appeal. That certificate, however, dismissed Senor's application for leave to appeal a subsequent May 8, 1996, decision by the Appellate Division. There is nothing in the record to indicate that Senor sought leave to appeal the Appellate Division's November 6, 1995 decision affirming his conviction.

**\*2** Meanwhile, on September 13, 1995, Senor, proceeding *pro se,* moved to vacate his judgment of conviction

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

pursuant to N.Y.Crim. Proc. Law § 440.10(1)(d) and (h), asserting the following: (1) the police violated his constitutional rights by seizing him without probable cause; (2) his acquiescence in accompanying the police to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion; (3) his trial counsel denied him effective assistance; and (4) the sentence should be modified because it punished him for exercising his right to a jury trial. The court denied his § 440 motion on December 21, 1995. It stated that his claim that the police seized him without probable cause was procedurally barred because the Appellate Division had determined it previously on the merits and because Senor never requested a hearing to test the probable cause issue. The court also found Senor's claims that he did not consent to accompany the police to the precinct and that he received ineffective assistance of counsel to be procedurally barred because he did not raise them on direct appeal and provided no justification for having failed to do so. Moreover, the court stated that Senor's ineffective assistance claim lacked merit. Finally, the court dismissed Senor's claim regarding his sentence because it did not relate to the validity of his conviction.

On November 16, 1995, while his § 440 motion was pending, Senor filed what the Appellate Division deemed to be a motion for reargument of his appeal and an application for a writ of error *coram nobis,* in which he asserted a claim of ineffective assistance of appellate counsel. Then, on January 3, 1996, Senor requested leave to appeal the denial of his § 440 motion and to consolidate that application with his motion for reargument and his *coram nobis* petition. On February 20, 1996, the Appellate Division denied Senor's application for a writ of error *coram nobis,* stating that petitioner had failed to establish that he was denied effective assistance of appellate counsel. *See People v. Senor,* 224 A.D.2d 646, 639 N.Y.S.2d 716 (2d Dep't 1996). In a separate order, also dated February 20, 1996, the Appellate Division denied Senor's motion to reargue his appeal. *See People v. Senor,*

No. 94-01311, slip op. at 1 (2d Dep't Feb. 20, 1996). On February 22, 1996, the Appellate Division denied Senor's leave to appeal the denial of his § 440 motion.

On March 29, 1996, Senor filed an application to reargue the denials of (1) his motion to reargue his appeal; (2) his application for leave to appeal the denial of his § 440 motion; and (3) his application to consolidate these motions with his application for a writ of error *coram nobis.* On May 8, 1996, the Appellate Division denied Senor's motion, and on June 19, 1996, the Court of Appeals denied Senor leave to appeal that decision. *See People v. Senor,* 88 N.Y.2d 942, 647 N.Y.S.2d 175, 670 N.E.2d 459 (1996).

On March 6, 1997, Senor filed a second *pro se* motion to vacate his conviction, pursuant to N.Y.Crim. Proc. Law § 440.10(1)(g). He contended that he had discovered new evidence, namely, the unsworn statements of Richard Umana. On May 1, 1997, Senor filed a third § 440 motion, again claiming that he had discovered new evidence, that time in the form of his conversations with four witnesses. The court denied both motions on June 10, 1997, stating that Senor had failed to submit any reliable evidence that these statements had been made, and that even if he had, the evidence would have altered the outcome of his trial.

**\*3** On August 6, 1997, Senor filed his first habeas corpus petition in this court (docket number 97-CV-4929). In that petition, he argued that: (1) his trial counsel was ineffective because he failed to challenge the legality of police conduct and failed to pursue other "colorable claims" based on known facts; (2) his appellate counsel provided ineffective assistance by refusing to brief on appeal the issue of lack of probable cause with respect to his arrest; (3) the police seized him without probable cause, questioning him based on a vague description fabricated by witnesses; (4) his acquiescence in

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

accompanying the arresting officers to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion; and (5) the prosecution's failure to turn over a prior statement of a prospective witness and its violation during trial of one of the court's pre-trial rulings deprived him of his right to a fair trial.

By letter dated January 25, 1999, Senor requested that his petition be placed "on hold" pending the outcome of an application for post-conviction relief in state court based on "some newly discovered evidence [he] just found." Construing this letter to be a motion to dismiss, I granted it without prejudice and closed the case on February 17, 1999. On March 25, 1999, Senor filed his fourth § 440 motion, which was denied on June 18, 1999. In that motion, her raised issues of certain *Rosario* violations, the insufficiency of proof, and prosecutorial misconduct. Leave to appeal was denied on September 15, 1999. Senor filed the instant habeas corpus petition (docket number 00-CV-5673) on July 24, 2000. It includes the same arguments his first petition included.

DISCUSSION

A. *The Statute of Limitations*

There is a one-year statute of limitations in habeas corpus proceedings, which generally begins to run on "the date on which the judgment [becomes] final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(a).[FN2] In *Ross v. Artuz, 150 F.3d 97, 103 (2d Cir.1998),* the Second Circuit held that a prisoner whose conviction became final prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") must be afforded a one-year grace period from April 24, 1996 (the effective

date of AEDPA) in which to file for federal habeas relief. See *id.* at 103. Pursuant to § 2244(d)(2), the time during which a properly-filed application for state post-conviction relief is pending shall not be counted in calculating the one-year grace period.

FN2. Section 2244(d)(1)(D) provides alternate start dates for the one-year limitation period, including "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." This provision is inapplicable in this case because Senor does not present any federal claims based on newly-discovered facts.

[1] Because Senor's judgment of conviction became final prior to April 24, 1996, his initial grace period to file for habeas relief was until April 24, 1997.[FN3] This period was tolled from April 24, 1996 through June 19, 1996 because, during that interval, Senor had motions pending in the state appellate courts in which he sought to reargue or appeal his previous adverse rulings. From June 19, 1996 through February 28, 1997, the date on which Senor filed his second § 440 motion, he did not have any litigation pending in the state courts. That period comprised 254 days.

FN3. Senior was convicted on January 10, 1994, and on November 6, 1995, the Appellate Division affirmed his conviction. Because he did not seek leave to appeal to the New York Court of Appeals, his judgment of conviction became final on December 6, 1995, the date upon which the 30-day period for seeking review in the Court of Appeals expired. See N.Y.Crim. Proc. Law § 460.10(5)(a).

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

**\*4** Senor's grace period was once again tolled from February 28, 1997 through June 10, 1997, the date on which his second and third § 440 motions were denied. Senor did not have any litigation pending in the state or federal courts between June 10, 1997 and August 6, 1997, which comprised fifty-seven days.

On August 6, 1997, Senor filed his first habeas corpus petition in this court (docket number 97-CV-4929), which I dismissed without prejudice on February 17, 1999. That time period comprised 560 days, during which the statute of limitations period was not tolled. *See Duncan v. Walker,* 533 U.S. 167, 181-82, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (the time period during which a habeas corpus petition is pending in federal court does not toll the one-year limitations period). Thus, prior to my dismissal of his Senor's first habeas corpus petition, Senor had allowed 871 days to run on his one-year grace period.

After February 17, 1999, Senor waited thirty-six days before filing his fourth § 440 motion, on March 25, 1999. That motion was denied on June 18, 1999, and leave to appeal was denied on September 15, 1999. The one-year grace period was tolled during that interval (provided it had not already expired).

Thereafter, Senor had no litigation pending between September 15, 1999 and the filing of his instant habeas petition. The earliest date on which Senor can be credited with filing the petition is July 24, 2000, the date on which he alleges that he placed a set of papers in the mailbox at the Green Haven Correctional Facility. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (when a prisoner is proceeding *pro se,* he is deemed to have filed a document on the date he delivered it to prison authorities for forwarding to the court clerk). The period from September 15, 1999 to July 24, 2000 comprises 313 days.

Adding the period during which the one-year grace period was running against Senor yields a total of 1,184 days. Accordingly, Senor's petition must be dismissed as untimely.

*Zarvela v. Artuz,* 254 F.3d 374, 380 (2d Cir.2001), *cert. denied,* 534 U.S. 1015, 122 S.Ct. 506, 151 L.Ed.2d 415 (2001), provides no relief for Senor. In that case, the Second Circuit held that when a district court is presented with a mixed petition, *i.e.,* a petition that contains some exhausted claims and some unexhausted claims, it may (1) dismiss the entire petition without prejudice; or (2) dismiss the unexhausted claims and stay the rest. The court further held that when a dismissal "could jeopardize the timeliness of a collateral attack," a stay is the only course of action. *Id.* (citation omitted). The court specified that the stay should be conditioned on the petitioner pursuing state court remedies "within a brief interval, normally 30 days after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after a state court exhaustion is completed." *Id.* at 381.

The Second Circuit has not yet decided whether *Zarvela* should be applied retroactively. *See Smaldone v. Senkowski,* 273 F.3d 133, 139 (2d Cir.2001). In any event, I see no unfairness in denying habeas relief to this petitioner because he failed to make the "prompt trip to and from the state courts" contemplated by *Zarvela. See Zarvela,* 254 F.3d at 383. Rather, he delayed more than ten months before returning from the state courts. I note that other district courts within the circuit have dismissed petitions as untimely where petitioners have failed to act within the time constraints suggested in *Zarvela. See, e.g., Felton v. Mazzuca,* No. 98-CV-4567, 2002 WL 655207, at \*4 (S.D.N.Y. April 18, 2002) (petition time-barred under *Zarvela* ); *Edwards v. Greiner,* No. 00-CV-1331, 2002 WL 1467708, at \* 3 (E.D.N.Y. May 7, 2002)

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

(same). Finally, *Zarvela* is distinguished because, as described below, Senor does not present a "mixed petition" because he has no further recourse to state court. Accordingly, there would have been no need to dismiss the unexhausted claims and stay the balance of the petition to enable Senor to exhaust his state remedies. *See DeJesus v. Greiner,* No. 01-CV-2173, 2001 WL 1098001, at *2, n. 2 (S.D.N.Y. Sept.10, 2001).

**\*5** In conclusion, Senor's petition must be dismissed as time-barred. In any event, as discussed below, each of Senor's claims fail as either procedurally defaulted or without merit because the state court's decision was neither contrary to nor an unreasonable application of clearly established Federal law. *See Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (citing *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

B. *The Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") has narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, which applies to habeas petitions filed after AEDPA's enactment in 1996, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Gilchrist v. O'Keefe,* 260 F.3d 87, 93

(2d Cir.2001).

A decision is "contrary to" clearly established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* Under the latter standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (citing *Williams,* 529 U.S. at 411). Interpreting *Williams,* the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (citing *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman,* 261 F.3d 303 (2d Cir.2001):

**\*6** [f]or the purposes of AEDPA deference, a state court 'adjudicate[s] a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. When a

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim-even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

*Id.* at 312.

C. *Senor's Claims*

1. *Ineffective Assistance of Trial Counsel*

Senor claims that his attorney provided him ineffective assistance at trial by failing to contest the legality of police conduct and failing to pursue other "colorable claims." He claims that his trial counsel should have challenged the circumstances surrounding his arrest. Specifically, he contends that the witnesses who initially gave the police a description of the shooter in this case either fabricated that description or embellished it to fit Senor. The police thus had no reason, independent of this improperly obtained description, to stop and detain Senor. Consequently, Senor maintains, his arrest violated the Fourth Amendment, and his attorney should have moved, pursuant to *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), to suppress the identification testimony as the fruit of an unlawful arrest. Moreover, Senor contends that his attorney should have moved to set aside the verdict after he informed his attorney of the possibility that he knew one of the jurors.

Respondent argues that these claims are barred from review in this Court because the state court denied them based on a state procedural default, which constitutes an independent and adequate state ground. A procedurally defaulted claim is reviewable only if petitioner can

overcome the procedural bar by showing cause and prejudice, or that a fundamental miscarriage of justice would occur if I declined to review the claim. *See Coleman v. Thompson,* 501 U.S. 722, 749-50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *see also Lee v. Kemna,* 534 U.S. 362, 122 S.Ct. 877, 885, 888, 151 L.Ed.2d 820 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question") (citation omitted). A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." *McCleskey v. Zant,* 499 U.S. 467, 493-94, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's actual and substantial disadvantage. *See Amadeo v. Zant,* 486 U.S. 214, 222, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). If the petitioner cannot show cause and prejudice, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim. A fundamental miscarriage of justice requires a showing of "clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner [guilty]." *Sawyer v. Whitley,* 505 U.S. 333, 335, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

**\*7** Senor asserted an ineffective assistance of counsel claim in a § 440 motion filed September 13, 1995. The court, in denying the motion, stated that this claim lacked merit, but was also procedurally barred under N.Y.Crim. Proc. Law § 440.10(2)(c) because Senor could have raised it on direct appeal, but did not, and he provided no justification for having failed to do so. The subsequent order of the Appellate Division denying, without comment, leave to appeal the denial of petitioner's § 440

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

motion does not alter that result. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Because a state procedural default qualifies as an independent and adequate ground, this Court cannot consider Senor's ineffective assistance claim unless Senor shows cause for the default and prejudice resulting therefrom. Respondent maintains that Senor has not shown cause for failing to raise this claim on direct appeal, nor any resulting prejudice. I need not address this issue because the ineffectiveness claim has no merit.

The Supreme Court has established the following standard for ineffective assistance claims:

First, the defendant must show that counsel's performance was deficient. This requires that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance fell below an "objective standard of reasonableness," *id.* at 688, and (2) that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. *See also Kieser v. New York,* 56 F.3d 16, 18 (2d Cir.1995). Actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance. *Strickland,* 466 U.S. at 689; *see also Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998).

[2] Senor has failed to demonstrate in this case that his trial counsel's actions or inactions amounted to constitutionally inadequate performance. He claims that, during a pre-trial hearing pursuant to *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), his counsel elicited evidence that the police stopped Senor without probable cause, but then failed to pursue that issue by requesting a *Dunaway* hearing in which he could have challenged the lineup identifications as the fruit of an unlawful arrest. The record, however, indicates that the only witness who testified at the *Wade* hearing, Detective Burzotta, mentioned nothing to suggest that he and his partner had stopped and questioned Senor improperly. Rather, Detective Burzotta testified that they questioned Senor because he fit the description of their suspect and was hanging out where they were told a person fitting the suspect's description might be. Moreover, Senor points to no evidence in his attorney's possession at the conclusion of the *Wade* hearing that would have sustained his claim that the police had no probable cause to detain him. Senor's attorney, therefore, could not have alleged facts sufficient to establish that the police obtained the pretrial identifications under unlawful circumstances, as required under N.Y.Crim. Proc. Law §§ 710.20(1) and 710.60(1) to demonstrate that a defendant is entitled to a *Dunaway* hearing. *See People v. Covington,* 144 A.D.2d 238, 533 N.Y.S.2d 433, 434 (1st Dep't 1988), *appeal denied,* 73 N.Y.2d 890, 538 N.Y.S.2d 802, 535 N.E.2d 1342 (1989); *People v. Rolland,* 180 Misc.2d 729, 693 N.Y.S.2d 803 (N.Y.Sup.Ct. Apr.6, 1999). Defense counsel's decision not to request a *Dunaway* hearing thus

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

did not fall outside the bounds of professionally competent assistance, and, on this point, petitioner has not met the first prong of the *Strickland* test.

**\*8** Senor has also failed to meet *Strickland* 's second prong in failing to show that, had his attorney requested a *Dunaway* hearing, a "reasonable probability" exists that the court would even have granted that request, much less suppressed the lineup identifications. *See Strickland,* 466 U.S. at 694. Likewise, counsel's decision to refrain from making a motion to set aside the verdict did not render his performance constitutionally deficient.

[3] Senor further claims that, after the jury found him guilty, he alerted his attorney to the possibility that he had known one of the jurors in high school. Based on that representation, Senor contends, his attorney should have moved to set aside the verdict. In papers submitted to this Court and to the state courts, however, Senor has provided no support for his claim that he knew one of the jurors. Moreover, even if such a showing were made, I cannot conceive of how it affords a basis for relief for Senor, who withheld the information from his attorney and the court. Further, in light of the considerable evidence adduced at trial supporting the jury's guilty verdict, Senor has not demonstrated that, had his attorney moved to set aside the verdict, the court would have granted the motion. With respect to both issues on which he bases his ineffective assistance claim, therefore, Senor has failed to satisfy either prong of the *Strickland* test.

1. *Ineffective Assistance of Appellate Counsel*

Senor next argues that his appellate counsel provided him ineffective assistance by refusing to brief on appeal the issue of lack of probable cause with respect to his arrest. In particular, Senor contends that his attorney should have

included in his brief to the Appellate Division the claims Senor asserted in his *pro se* supplemental brief to the Appellate Division: that (1) the police seized him in violation of his Fourth Amendment rights when they surrounded him without probable cause or exigency and took him to the precinct; and (2) the police testimony regarding his arrest was unworthy of belief due to material inconsistencies. Senor presented this claim of ineffective assistance of appellate counsel to the Appellate Division in his application for a writ of error *coram nobis.* The Appellate Division denied it on the merits, stating that Senor had failed to establish that he was denied effective assistance of appellate counsel. *See People v. Senor,* 224 A.D.2d 646, 639 N.Y.S.2d 716 (2d Dep't 1996).

Respondent contends that Senor's claim lacks merit and fails to meet the standard for such claims established in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although the Supreme Court formulated the *Strickland* test in the context of examining a claim of ineffective assistance of trial counsel, the same test applies to claims regarding the performance of appellate counsel. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994); *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992). Appellate counsel need not present every nonfrivolous argument that could be made. *See Mayo,* 13 F.3d at 533; *see also Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategy choices. *See Mayo,* 13 F.3d at 533. A petitioner, however, may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. *Cf. Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998) ("relief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy").

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

**\*9 [4]** Senor has failed to demonstrate in this case that his appellate counsel's actions amount to constitutionally inadequate performance. In his thirty-one-page brief to the Appellate Division, Senor's counsel focused on three issues that, he urged, warranted a reversal of Senor's conviction: (1) the prosecution's failure to turn over a prospective witness's prior statement; (2) the prosecution's violation, during the cross-examination of petitioner at trial, of the court's pre-trial ruling; and (3) the insufficiency of the evidence to sustain a murder conviction. The brief included a detailed review of the evidence presented at trial as well as citations to the record. Counsel chose not to pursue on appeal the issues related to the propriety of Senor's arrest, presumably because, in his professional judgment, he believed those issues were not preserved for appellate review and, in any event were meritless.

Counsel's decision not to advance the lack of probable cause claim on appeal did not bring his performance below an objective standard of reasonableness. *See Strickland, 466 U.S. at 687.* The claim was both unpreserved for appellate review and meritless, and thus the decision to forgo pursuing it on appeal did not fall below any standard of reasonableness.[FN4]

> **FN4.** Prior to Senor's first trial, his trial counsel moved to suppress his pretrial identification, claiming, among other grounds, that the police had arrested Senor without probable cause. The prosecution consented to a *Wade* hearing to examine the propriety of the lineup identifications, but did not address Senor's contention that the identifications were the result of an unlawful arrest. During the *Wade* hearing, the prosecution called Detective Burzotta as its sole witness, while the defense called no witnesses. At the conclusion of the hearing, the court addressed only the issue of the lineups, stating that it found they had not been unduly suggestive, and denied the defense's motion to suppress the lineup identifications.

Senor never asked the court for a *Dunaway* hearing to determine whether the police had probable cause to arrest him. Nor did he ask the court to reconsider its decision in the *Wade* hearing or move to reopen the hearing based on any evidence adduced at the first trial. Furthermore, prior Senor's second trial, Senor did not move, pursuant to N.Y.Crim. Proc. Law §§ 710.20(1) and 710.60(1), to suppress any evidence or for a hearing on any suppression issue. Nor did he move, based upon evidence adduced at the second trial, for reconsideration of his initial motion or for a *Dunaway* hearing.

Under New York law, a defendant fails to preserve an issue for appellate review when he fails to object with specificity during the original proceeding, to seek curative instructions, or to request a mistrial. *See* N.Y.Crim. Proc. Law § 470.05(2). Because Senor failed to object to the admission of the lineup identifications on the specific basis that the police obtained them in violation of his Fourth Amendment rights, the questions of the propriety of Senor's detention and the admissibility of the resulting evidence were not preserved for appellate review. *See People v. Miguel, 53 N.Y.2d 920, 924, 440 N.Y.S.2d 923, 423 N.E.2d 400 (1981).* Moreover, as discussed earlier, Senor's trial counsel had no basis upon which to request a *Dunaway* hearing to raise the probable cause issue.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 14

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

In any event, Senor cannot show that he was prejudiced by his appellate counsel's decision not to advance the probable cause claim because Senor asserted that claim in his *pro se* supplemental brief submitted to the Appellate Division. The Appellate Division considered the claims raised in Senor's *pro se* brief and determined that they were either unpreserved for appellate review or without merit. Consequently, had appellate counsel included the probable cause claim in his brief to the Appellate Division, the result would have been the same.

2. *Lack of Probable Cause to Arrest*

[5] Senor claims that the police seized him without probable cause, questioning him based on a vague description concocted by two witnesses. As discussed earlier, Senor maintains that the witnesses who initially gave the police a description of the shooter in this case either fabricated that description or embellished it to fit Senor. Because the police had no other reason to stop and detain Senor, he maintains that his resulting arrest violated the Fourth Amendment, and the lineup identifications were the fruit of that unlawful arrest.

This claim is barred from federal review because Senor failed to exhaust it in the state courts. The exhaustion requirement, which arises out of considerations of comity between the federal and state judicial systems, ensures that state courts have an opportunity to correct any violations of the federal constitutional rights of prisoners already within their jurisdiction. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999); *Duncan v. Henry,* 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (*per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982).* Exhaustion requires a petitioner to have presented to each level of the state courts the same federal constitutional claims, legally and factually, that are raised in his petition to the federal court, so that the state courts will have been alerted to them and have had the initial opportunity to assess them. *See O'Sullivan,* 119 S.Ct. at 1732-33; *Duncan,* 513 U.S. at 365-66; *Picard,* 404 U.S. at 275-76; *Daye,* 696 F.2d at 191.

**\*10** In this case, Senor presented this Fourth Amendment claim on direct appeal in his *pro se* supplemental brief to the Appellate Division. In its November 6, 1995, decision affirming Senor's judgment of conviction, the Appellate Division rejected this claim, among others, without discussion, as either not preserved or without merit. *See People v. Senor,* 221 A.D.2d 384, 635 N.Y.S.2d 480 (2d Dep't 1995).[FN5] Senor then failed to apply for leave to appeal to the New York Court of Appeals from the Appellate Division's decision affirming his conviction.[FN6] Because he did not present this claim to the New York Court of Appeals, the claim is unexhausted. *See O'Sullivan,* 119 S.Ct. at 1732-33; *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991) (stating that, in order to exhaust state remedies, "a petitioner must present his federal constitutional claim to the highest court of the state"). [FN7]

FN5. In *Fama v. Commissioner of Corr. Servs.,* 235 F.3d 804, 810 (2d Cir.2000), the Second Circuit held that when a state court uses language such as "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit," the validity of the claim is preserved and is subject to federal review.

FN6. As mentioned earlier, Senor states that he sought leave to appeal the Appellate Division's November 6, 1995, decision, but cites as support a certificate from the New York Court of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

Appeals, dated June 19, 1996, that denies him leave to appeal a subsequent May 8, 1996, decision by the Appellate Division. Respondent maintains that Senor did not seek leave to appeal the Appellate Division's November 6, 1995, decision affirming his conviction, and nothing in the record indicates that he did.

FN7. Although Senor also raised this same claim in a § 440 motion and then appealed the denial of that motion to the Appellate Division, he still failed to exhaust it because the New York Court of Appeals never had the opportunity to review the claim.

Senor can no longer exhaust this claim because, under N.Y.Crim. Proc. Law § 460.10(5), he had thirty days after November 6, 1995, the date the Appellate Division affirmed his conviction, to make an application for leave to appeal to the Court of Appeals. Because this time limit has expired, this claim is procedurally barred from review by the state courts. Where it is clear that a state court would determine that an unexhausted claim is procedurally barred from state review, such a claim is deemed exhausted. *See Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (citing *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state would hold the claim procedurally barred.")).

Senor has not attempted to show cause and resulting prejudice for his failure to appeal the Appellate Division's decision affirming his conviction. In addition, my refusal to consider the claim would not result in a miscarriage of justice.

In any event, the claim is without merit. In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court curtailed federal habeas review of Fourth Amendment claims where the state has provided "an opportunity for full and fair litigation" of the Fourth Amendment challenge. *Id.* at 482. Following *Powell,* the Second Circuit has held that courts should review Fourth Amendment claims in habeas petitions only if: (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process. *See Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977) (*en banc* ); *see also Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992).

Senor cannot claim that the state lacked sufficient procedures for redress of his Fourth Amendment claim because the courts in this circuit have expressly approved New York's procedure for litigating such claims, specified in N.Y.Crim. Proc. Law §§ 710 *et seq.,* as facially adequate. *See, e.g., Gates,* 568 F.2d at 837 & n. 4; *Taylor v. Kuhlmann,* 36 F.Supp.2d 534, 549 (E.D.N.Y.1999); *Holmes v. Scully,* 706 F.Supp. 195, 201 (E.D.N.Y.1989).

*11 Moreover, Senor has not alleged that an unconscionable breakdown in the process occurred, nor could he. To allege such a breakdown, Senor must prove that "no state court ... conducted a 'reasoned method of inquiry into relevant questions of fact and law' or any inquiry at all into the Fourth Amendment claim." *Shaw v. Scully,* 654 F.Supp. 859, 863-64 (S.D.N.Y.1987) (quoting *Cruz v. Alexander,* 477 F.Supp. 516, 523 (S.D.N.Y.1979)); *see also Taylor,* 36 F.Supp.2d at 549. At the *Wade* hearing prior to his first trial, Senor raised the issue of lack of probable cause to arrest, but did not adduce sufficient facts to press that issue in a *Dunaway* hearing. A state court thus conducted an inquiry into the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

questions relevant to the issue raised, and no unconscionable breakdown in the process occurred. As a result, I cannot consider Senor's illegal arrest argument as an independent basis for habeas review.

### 3. *The Claim that Senor did not Voluntarily Accompany the Police to the Precinct*

[6] Senor claims that his acquiescence in accompanying the arresting officers to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion. Respondent argues that this claim is barred from habeas review because the state court denied it based on a state procedural default, which constitutes an independent and adequate state ground.

I agree. In denying petitioner's first § 440 motion, the court held that Senor's claim that he did not voluntarily consent to accompany the police to the precinct station was procedurally barred under N.Y.Crim. Proc. Law § 440.10(2)(c), because petitioner based it on matters that appeared in the record, yet did not raise the claim on direct appeal and failed to offer a "reasonable excuse" for not doing so. The order of the Appellate Division denying, without comment, leave to appeal the denial of petitioner's § 440 motion does not alter this result. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Senor does not show cause and prejudice for the default. Furthermore, considering the paucity of evidence supporting his claim that his arrest violated the Fourth Amendment, a miscarriage of justice will not result from my failure to review the claim.

### 4. The Claim That the Prosecutor Failed to Turn Over a Prior Witness Statement and *Violated a Pre-Trial Ruling*

During Senor's second trial, defense witness Yashika Jones testified on direct examination that, on the night Senor was arrested, she went to Putnam Avenue, where Senor usually hung out, to look for him. *See* Tr. at 259.[FN8] On cross-examination, the prosecutor asked Jones why she thought Senor would be at Putnam Avenue. Jones replied, "Because he sold drugs up there on Putnam Avenue." *Id.* at 264. Later on in the trial, when Senor testified, defense counsel asked him if he had ever been convicted of a felony. Senor answered yes. Defense counsel then asked if the conviction related to drugs. Senor replied, "Yes, it was possession." *Id.* at 295. On cross-examination, the prosecutor asked Senor, "Now, you were arrested for selling drugs for the case that you took five years probation for?" *Id.* at 305. Senor answered, "Yes." *Id.*

> FN8. "Tr." refers to the transcript of Senor's second trial.

**\*12** Senor claims that the prosecutor violated New York law as articulated in *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), by failing to turn over to the defense a statement Jones gave to the prosecutor prior to trial, in which she allegedly mentioned that Senor had sold drugs on Putnam Avenue. He further asserts that, by eliciting from Jones that Senor sold drugs and by asking Senor on cross-examination about his drug activities, the prosecutor violated the court's pre-trial ruling in a hearing pursuant to *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974). During that *Sandoval* hearing, the trial court had ruled that if Senor testified on his own behalf at trial, the prosecution could inquire about his prior felony conviction, but could

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

not elicit the underlying facts of that conviction, specifically that it was for possession of a controlled substance. Senor maintains that the prosecutor intentionally withheld from the defense Jones' statement regarding Senor selling drugs, so that, at trial, the prosecutor could circumvent the court's *Sandoval* ruling and elicit from Jones facts related to Senor prior drug possession conviction. Senor contends that these actions deprived him of a fair trial.

Respondent contends that this Court cannot review this claim because it relates only to state, not federal, questions. That is not entirely correct. The Supreme Court has emphasized on several occasions that federal habeas relief does not lie for errors of state law. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). In conducting habeas review, a federal court is limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States. *See Estelle,* 502 U.S. at 67; 28 U.S.C. § 2241. A federal court, therefore, cannot review a habeas claim based on an alleged *Rosario* violation because the *Rosario* rule is purely a matter of state law. *See Green v. Artuz,* 990 F.Supp. 267, 274 (S.D.N.Y.1998); *Morrison v. McClellan,* 903 F.Supp. 428, 429 (E.D.N.Y.1995); *United States ex rel. Butler v. Schubin,* 376 F.Supp. 1241, 1247 (S.D.N.Y.1974), *aff'd,* 508 F.2d 837 (2d Cir.1975).

[7] A claim based on an alleged *Sandoval* violation, on the other hand, deals with an evidentiary question and may present an issue for habeas relief, but only if the petitioner establishes that the trial court committed error that constitutes a deprivation of a constitutionally recognized right. *See Rosario v. Kuhlman,* 839 F.2d 918, 924-25 (2d Cir.1988); *Benitez v. Senkowski,* No. 97-Civ-7819, 1998 WL 668079, at *7 (S.D.N.Y. Sept.17, 1998); *Rojas v.*

*Senkowski,* No. 95-CV-1866, 1996 WL 449321, at *3 (E.D.N.Y. July 29, 1996) ("The decision to admit prior convictions ... [is] not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional magnitude." (quotations omitted)).

**\*13** In order for an evidentiary error to be cognizable under habeas corpus review, the error must cause "actual prejudice" to the petitioner by having a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson,* 507 U.S. 619, 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted); *see also Loliscio v. Goord,* 263 F.3d 178, 185 (2d Cir.2001) (posing but not answering question whether, in light of AEDPA, a federal habeas court should continue to apply the *Brecht* standard or determine instead whether the state court's decision was contrary to, or involved an unreasonable application of, the harmless error standard established in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

Even assuming the trial court erroneously permitted the prosecutor to question Senor about his prior drug conviction, Senor has not demonstrated that the ruling influenced the jury's verdict in any way. The prosecution presented abundant evidence at trial pointing to petitioner's guilt. Furthermore, Senor's claim is meritless. On direct examination of Jones, the defense opened the door to questions regarding why Jones went to Putnam Avenue to look for Senor. In addition, when questioning Senor, the defense counsel, not the prosecutor, elicited the facts underlying Senor's prior felony conviction. The prosecutor, therefore, appropriately developed these facts on cross-examination of Senor.

[8] In any event, the claim is procedurally defaulted. Senor

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

asserted this claim on direct appeal to the Appellate Division, but failed to include it in his leave application. Moreover, he failed to include it in any of his § 440 motions. Thus, the claim is unexhausted. *See Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991). Senor can no longer exhaust this claim because, under N.Y. Crim Proc. Law § 460.10(5), he had thirty days after November 6, 1995, the date the Appellate Division affirmed his conviction, to make an application for leave to appeal to the Court of Appeals. Thus, he can no longer seek leave to appeal this claim. In addition, he cannot raise this claim in another § 440 motion because it relates to facts that appear on the record and, consequently, he should have asserted it on direct appeal and cannot do so now through a collateral challenge. *See* N.Y.Crim. Proc. Law § 440.10. Where it is clear that a state court would determine that an unexhausted claim is procedurally barred from state review, such a claim is deemed exhausted. *See O'Sullivan,* 119 S.Ct. at 1732-33; *Grey,* 933 F.2d at 120. Therefore, this claim is procedurally barred from federal review because Senor fails to show cause and prejudice or that a fundamental miscarriage of justice will result.

CONCLUSION

For the reasons stated above, Senor's petition for a writ of habeas corpus is denied in its entirety. I hereby decline to issue a certificate of appealability, since Senor has not presented a "substantial showing of the denial of a constitutional right." *Reyes v. Keane,* 90 F.3d 676, 680 (2d Cir.1996).

**\*14** So Ordered.

E.D.N.Y.,2002.
Senor v. Greiner
Not Reported in F.Supp.2d, 2002 WL 31102612

(E.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Julia LONG, Petitioner,
v.
Elaine A. LORD, Respondent.
**No. 03-CV-0461 NPM.**

March 21, 2006.

Julia Long, Bedford Hills Correctional Facility, Bedford
Hills, NY, Petitioner, pro se.

Hon. Eliot Spitzer, Office of Attorney General, New York
State Attorney General, The Capitol, Albany, NY, for the
Respondent.

Bridget E. Holohan, Ass't Attorney General, of counsel.

*Memorandum-Decision and Order issued in*

SMITH, J.

*MEMORANDUM-DECISION and ORDER*

MCCURN, Senior J.

*1 Petitioner Julia Long, a New York State prison inmate
as a result of 1997 convictions for the crimes of first
degree assault and criminal possession of a weapon, has
commenced this proceeding seeking federal habeas relief
pursuant to 28 U.S.C. § 2254. In her petition, Long asserts
seven separate grounds in support of her request for
federal habeas intervention. Respondent has filed a
response in opposition to Long's petition, arguing therein
that some of the claims asserted by Long are procedurally
barred, and additionally that none of the grounds advanced
in her petition have merit.

This Court finds that Long is procedurally barred from
asserting several of the claims she has raised in her
petition. Since petitioner has not established cause for her
procedural default concerning those grounds or that she is
actually innocent of any of the crimes of which he stands
convicted, this Court denies those claims as procedurally
barred. Furthermore, after considering the remaining
grounds raised by Long in her petition in conjunction with
applicable case law, this Court finds that the additional
claims asserted by Long in her habeas petition lack merit.
Accordingly, this Court denies and dismisses Long's
petition.

I. *BACKGROUND*

A. *State Court Proceedings*

According to the state court records below, in the
afternoon of May 1, 1995, Long attended a meeting at the
TC Club in Albany, New York in order to discuss the
possibility of leasing that property from its owner. *See*
Transcript of Trial of Julia Long (1/3/97) ("Trial Tr.") at
366. Ivetta Parson, an individual with whom Long had had

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

an altercation earlier that year, was also at the club around the time of Long's meeting. *See* Trial Tr. at 120-23. For reasons not apparent from the record, Long approached Parson at that time and sprayed her face with mace. Trial Tr. at 123-24. Parson ran out of the club and went to the home of her friend, Regina Monell, where Parson washed her face. Trial Tr. at 125. The two then decided to drive to the TC Club with some friends and confront Long about the incident that had just transpired. Trial Tr. at 126-27. When the group arrived at the club, Parson observed Long holding a handgun. Trial Tr. at 132. Parson exited her vehicle, and as she was walking around her car she discovered that she was bleeding.[FN1] Trial Tr. at 132-33. Around this same time, Monell observed Long firing her weapon at Parson, Trial Tr. at 163-64, and soon thereafter Monell noticed that she had also been shot. Trial Tr. at 164.

> FN1. Parson did not hear Long's gun discharge. Trial Tr. at 133.

**\*2** The trial transcript also reflects that on May 1, 1995, Charles Traynham was a long time acquaintance of Robert Temple. Trial Tr. at 292. At approximately 5:00 p.m. on that date, Traynham and Temple were across the street from the TC Club. Trial Tr. at 293. Soon after Traynham went into a nearby store, he heard gunshots. Trial Tr. at 293-94. Traynham left the store and heard Temple calling out that he had been "hit." Trial Tr. at 294. When Traynham noticed that Temple was bleeding, Traynham drove him to a nearby hospital to be treated for his injuries, Trial Tr. at 296, which included a life-threatening gunshot wound to an artery in his right arm. Trial Tr. at 186-89.[FN2]

> FN2. The prosecution was unable to locate Temple prior to the date of Long's trial. Trial Tr. at 289.

Kenneth Kennedy, a Detective with the Albany Police Department, was assigned to perform a criminal investigation relating to the above-referenced shooting. After speaking with several individuals, Detective Kennedy began looking for Long so that he could question her about her activities on May 1, 1995. Trial Tr. at 325. When Long learned that the police were attempting to question her about the shooting, she contacted an attorney and thereafter surrendered to law enforcement agents. Trial Tr. at 438-39.

On October 13, 1995, an Albany County grand jury returned an indictment against Long. *See* Indictment No. 950631 ("Indictment"). In that accusatory instrument, Long was charged with one count of attempted murder, two counts of first degree assault, and two counts of second degree criminal possession of a weapon. *See* Indictment, Counts One through Five. Beginning on January 3, 1997, Long was tried before a jury on the foregoing charges in Albany County Court with County Court Judge Thomas A. Breslin presiding. After the parties presented their closing arguments and the court instructed the jury, the jury began its deliberations. Following several requests by the jury for the reading back of testimony and clarifications regarding the court's instructions, Trial Tr. at 634-52, the jury declared that it had reached a verdict in the case. In its verdict, the jury: i) acquitted Long of the attempted murder charge; ii) convicted her of both counts charging Long with first degree assault; iii) convicted her of the count charging Long with second degree criminal possession of a weapon (which related to victim Monell); and iv) acquitted her of the final count charging Long with second degree criminal possession of a weapon (which related to victim Temple). Trial Tr. at 652-55.

Prior to sentencing, Long's counsel filed a motion to set

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

aside the jury's guilty verdict pursuant to New York Criminal Procedure Law ("CPL"), Section 330.30 ("CPL § 330 Motion"). *See* Record on Appeal ("Record") at 133. In that application, defense counsel alleged that the convictions must be reversed because Parson was allowed to testify that she was shot by Long despite the fact that Long had never been charged with assaulting Parson. Record at 134. Counsel also claimed that there was insufficient evidence adduced at trial to establish that Temple was shot by Long. Record at 135. After hearing argument on that application, on February 21, 1997, the county court denied Long's CPL § 330 Motion in its entirety. Record at 119-24. That court then sentenced Long to consecutive, indeterminate terms of five to fifteen years imprisonment on each of the first degree assault convictions, and a lesser, concurrent term of imprisonment on the criminal possession of a weapon conviction. *See* Record at 130-31.

**\*3** Long appealed her convictions and sentences to the New York State Supreme Court, Appellate Division, Third Department. However, on November 25, 2000, prior to perfecting that appeal, Long filed a motion to vacate her sentence pursuant to CPL § 440.20. Record at 138. In that application, Long alleged that the consecutive sentences that had been imposed on her by the county court were illegal and contrary to her rights under both the federal and New York state constitutions. *See* Record at 139-44 ("CPL 440.20 Motion"). In support of that application, Long provided an affidavit of Temple-of whom Long had been convicted of assaulting-in which Temple declared that he could not identify the individual who shot him on May 1, 1995. Record at 145. Long's application was opposed by the District Attorney, Record at 146-47, and by Decision and Order dated January 25, 2001, Judge Breslin denied Long's CPL 440.20 Motion in its entirety. Record at 149-51 ("January, 2001 Order"). Long sought leave to appeal that decision to the Appellate Division, *see* Record at 152, and in its order dated April 20, 2001, the Third Department granted Long leave to appeal the

January, 2001 Order to the Appellate Division along with her direct appeal of her conviction. Record at 155.

With the assistance of counsel, Long argued in her direct appeal that: i) she was unduly prejudiced by Parson's testimony to the effect that she was shot by Long; ii) there was insufficient evidence adduced at trial to convict Long of the first degree assault of Temple; iii) she was denied her right to a fair trial due to the manner in which the trial court mischaracterized the allegations of one of the charges in the Indictment; iv) the jury's verdict was repugnant; and v) the sentences were unduly harsh and excessive. *See* Appellant's Brief on Appeal ("App.Br.") at 1-25. That appeal was opposed by the District Attorney in his brief dated December 14, 2001, and on February 28, 2002, the Third Department unanimously affirmed Long's convictions and sentences. *People v. Long,* 291 A.D.2d 720, 738 N.Y.S.2d 721 (3d Dept.2002). New York's Court of Appeals denied Long leave to appeal in its order dated June 17, 2002. *See People v. Long,* 98 N.Y.2d 677, 746 N.Y.S.2d 467, 774 N.E.2d 232 (2002).

B. *Proceedings in this Court*

Long commenced this proceeding, *pro se,* on April 14, 2003. *See* Petition (Dkt. No. 1). In that pleading, petitioner argues that: i) admission into evidence of an uncharged crime purportedly committed by Long deprived her of her right to a fair trial; ii) the trial court wrongfully denied Long's application to dismiss the third count in the Indictment; iii) the jury's verdict was repugnant; iv) the trial court misstated the factual allegations contained in the third count in the Indictment in its instructions to the jury; v) the sentence imposed was both harsh and excessive; vi) the imposition of consecutive sentences was both illegal and violative of Long's right against Double Jeopardy; and vii) the Appellate Division wrongfully refused to hear Long's appeal of the denial of her CPL 440.20 Motion.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

*See* Petition at ¶ 13. Long has also filed a memorandum of law in support of her petition. *See* Dkt. No. 2 ("Supporting Mem.").

**\*4** By Order dated April 24, 2003, the respondent was ordered to file a response to Long's petition. On June 20, 2003, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer together with a memorandum in opposition to Long's petition. Dkt. Nos. 8-9. In his opposing memorandum, respondent argues that Long is procedurally barred from asserting certain of the claims raised in her petition, and that none of Long's claims have merit. *See* Dkt. No. 9 ("Opp.Mem.").

## II. *DISCUSSION*

### A. *Procedurally Defaulted Claims*

This Court initially considers respondent's claim that Long has procedurally defaulted on her claims: i) which allege that she was denied her right to a fair because Parson was allowed to testify about an uncharged crime purportedly committed by Long; ii) that assert that the county court mischaracterized a charge contained in the Indictment; and iii) which contest both the legality and constitutionality of her sentences. *See* Opp. Mem. at 3-6.

### 1. *Admission of Evidence of an Uncharged Crime*

Petitioner's initial ground for relief is based upon Parson's trial testimony in which she suggested that she was shot by Long. *See* Petition, Ground A.

In her direct appeal, Long noted that the Indictment never charged her with committing any crime against Parson. *See* App. Br. at 3; *see also* Indictment. Prior to trial, defense counsel obtained a ruling from the county court that precluded Parson from testifying about the fact that she had been shot on May 1, 1995. *See* App. Br. at 5; *see also* Appellant's Appendix at A1. At trial, however, Parson testified that she was shot on that day in a manner which suggested that Long was the individual who had shot her. *See* Trial Tr. at 163-64. In addressing Long's appellate claim that the admission of that testimony constituted reversible error, the Third Department ruled that Long had "failed to object to Parson's testimony and, therefore, did not preserve this issue for appellate review." *Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721 (citing CPL § 470.05[2]) (other citation omitted).

A state court's determination that a claim was not preserved for appellate review is a finding of procedural default. *See Rivera v. Moscicki,* No. 03 CIV. 5810, 2005 WL 2347840, at *3 (S.D.N.Y. Sept. 22, 2005); *Wilson v. Supt., Attica Corr. Facility,* No. 9:00-CV-767, 2003 WL 22765351, at *3 (N.D.N.Y. Nov.24, 2003) (Sharpe, M.J.) (citations omitted), *adopted, Wilson v. Supt., Attica Corr. Facility,* slip op. at 2 (N.D.N.Y. Feb. 3, 2004) (Mordue, J.); *Betancourt v. Bennett,* No. 02-CV-3204, 2003 WL 23198756, at *12 (E.D.N.Y. Nov.7, 2003). Therefore, Long has procedurally defaulted on her first ground for relief.

### 2. *Misstatement Regarding Count Three of the Indictment*

In her fourth ground seeking federal habeas intervention, Long argues that in its charge to the jury, the trial court mischaracterized the allegations contained in Count Three of the Indictment. Petition, Ground D. Specifically, she notes that such count alleged that Long shot Temple in his *chest* and right arm. *See* Indictment, Count Three

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

(emphasis added). In its charge to the jury, however, the trial court declared that this count alleged that Long had shot Temple in the right side of his *head* and in his right arm. *See* Trial Tr. at 617 (emphasis added). Long claims in this action, as she did in her direct appeal, that as a result of the foregoing she was deprived of her right to a fair trial. *See* Supporting Mem. at 16-18; App. Br. at 16-18.

**\*5** In addressing this appellate claim, the Appellate Division determined that Long had "failed to object to the court's charge and, therefore, that error has not been preserved for review (*see,* CPL 470.05[2] )." Since the Third Department explicitly determined that Long had failed to preserve this issue for appellate review, Long has procedurally defaulted on the fourth claim asserted in her petition.[FN3] *Rivera,* 2005 WL 2347840, at *3; *Wilson,* 2003 WL 22765351, at *3; *Betancourt,* 2003 WL 23198756, at *12.

> FN3. The Appellate Division's decision might be liberally read as one that alternatively addressed the merits of this claim. *See Long,* 291 A.D.2d at 723, 738 N.Y.S.2d 721 (after noting Long's procedural default on the claim relating to the county court's misreading of Count Three of the Indictment, the Third Department opined that "were we to address the issue, we would find it without merit since all other trial references to Temple's wound correctly characterized its nature").
>
> Even assuming, *arguendo,* that the above cited language may properly be characterized as an (alternative) decision addressing the merits of this claim, the undersigned notes that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as

an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990); *Glenn v. Bartlett,* 98 F.3d 721, 724-25 (2d Cir.1996) (citing *Velasquez* ); *see also Olivo v. Thorton,* No. 05 CIV.3237, 2005 WL 3292542, at *8 (S.D.N.Y. Dec. 6, 2005); *Broome v. Coughlin,* 871 F.Supp. 132, 134 (N.D.N.Y.1994) (Kaplan, J., sitting by designation). Therefore, this Court deems Long to have procedurally defaulted on this ground.

3. *Claims Raised in* CPL 440.20 *Motion*

Long argued in her CPL 440.20 Motion, and similarly asserts in her sixth ground for relief herein, that the county court's imposition of consecutive sentences on Long was both illegal and contrary to her constitutional right to be free from Double Jeopardy. *See* Record at 139-44; Petition, Ground F.

As noted above, the Appellate Division granted Long permission to appeal the county court's January, 2001 Order denying Long's CPL 440 .20 Motion. *See* Record at 155. Long's appellate counsel did not, however, assert on appeal any claims that Long had raised in her CPL 440.20 Motion. *See* App. Br. at 4-25. In addressing this fact in the context of Long's appeal, the Third Department noted:

Although [Long] appeals from both the judgment of conviction and the order denying the CPL 440.20 motion, her failure to address any issues pertaining to the denial of her CPL 440.20 motion constitutes an abandonment of the appeal from that order. Accordingly, we address only the arguments raised on

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

the appeal from the judgment of conviction.

*Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721.

Where a petitioner abandons a claim at the appellate level, federal courts are to view such a claim as procedurally defaulted. *Delucia v. West,* No. 04 CIV. 3605, 2005 WL 1981708, at *4 (S.D.N .Y. Aug. 17, 2005) ("claims [that] may be considered abandoned ... result[ ] in a procedural default"); *Stephens v. Lacy,* 914 F.Supp. 44, 45 (E.D.N.Y.1996) (claims abandoned at the appellate level are procedurally defaulted). This Court accordingly finds that Long has procedurally defaulted on her sixth ground seeking federal habeas intervention.

B. *Consequences of Procedural Default*

A federal district court is precluded from reviewing a habeas claim if the state courts' rejection of that same claim rested on a state procedural bar. *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000); *Marengo v. Conway,* 342 F.Supp.2d 222, 228 (S.D.N.Y.2004) (citations omitted). Thus, where the state court decision clearly and expressly indicates that its determination rests on a state procedural bar, a federal court may not review such claim when it is subsequently asserted in a federal habeas petition unless the petitioner demonstrates both good cause for and actual prejudice resulting from the noncompliance with the state's procedural rule. *Fama v. Commissioner of Correctional Services,* 235 F.3d 804, 809 (2d Cir.2000); *Livingston v. Herbert,* No. 00-CV-1698, 2002 WL 59383, at *2 (N.D.N.Y. Jan. 3, 2002) (Homer, M.J.), *adopted,* No. 00-CV-1698, docket no. 20 (N.D.N.Y. Jan. 24, 2002) (Kahn, J.), *appeal dismissed,* No. 02-2083, slip op. at 1 (2d Cir. Aug. 28, 2002) (unpublished). Additionally,

review of procedurally defaulted claims is available where the petitioner demonstrates that a fundamental miscarriage of justice would occur absent federal court review.[FN4] *Dixon,* 293 F.3d at 80; *Morales v. Greiner,* No. CV-98-6284, 2005 WL 1009545, at *8 (E.D.N.Y. May 2, 2005).

> FN4. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.2002).

**\*6** For this Court to excuse Long's procedural default under the "cause and prejudice" exception which permits federal review of procedurally barred claims, she must first establish "cause" for her default. *E.g., St. Helen v. Senkowski,* 374 F.3d 181, 184 (2d Cir.2004) (citation omitted), *cert. denied,* 543 U.S. 1058, 125 S.Ct. 871, 160 L.Ed.2d 785 (2005); *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985). To establish such cause, a petitioner must show that "some objective external factor impeded [her] ability to comply with the relevant procedural rule." *Wilson,* 2003 WL 22765351, at *3 (citing *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Restrepo v. Kelly,* 178 F.3d 634, 638 (2d Cir.1999)). Examples of such "external factors" include "interference by officials," the ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's trial or on direct appeal. *Wilson,* 2003 WL 22765351, at *3 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)); *see Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (citing *Murray* ); *United States v. Helmsley,* 985 F.2d 1202, 1206 (2d Cir.1992).

In the present action, Long has not offered any cause for her failure to preserve the above-referenced procedurally

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

defaulted claims-all of which were based upon matters contained in the record-for review in her direct appeal of her conviction. Significantly, Long has never asserted, in the state courts or this action, that her trial counsel rendered ineffective assistance by his failure to object to either Parson's trial testimony or the manner in which the trial court described the allegations contained in the third count in the Indictment to the jury during the county court's instructions.[FN5] Nor has Long ever argued that her appellate counsel rendered ineffective assistance by failing to raise any of the claims Long asserted in her CPL 440.20 Motion on appeal.

FN5. Long was represented by Eugene Grenz, Eq. at her criminal trial, and by Theresa M. Suozzi, Esq. on appeal.

Since Long has not established cause for her procedural default concerning these claims, this Court need not decide whether she suffered prejudice, because federal habeas relief is unavailable under this limited exception permitting review of procedurally barred claims unless *both* cause and prejudice is demonstrated.[FN6] *See Stepney,* 760 F.2d at 45; *D'Alessandro v. Fischer,* No. 01 CIV. 2551, 2005 WL 3159674, at *9 n. 10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney* ); *Moore v. Greiner,* No. 02 CIV.6122, 2005 WL 2665667, at *12 (S.D.N.Y. Oct.19, 2005) (citing *Stepney* ); *Lutes v. Ricks,* No. 02-CV-1043, 2005 WL 2180467, at *9 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citing *Stepney* and *Jones v. Barkley,* No. 9:99-CV-1344, 2004 WL 437468, at *9 (N.D.N.Y. Feb.27, 2004) (Sharpe, J.) (collecting cases)); *Pou v. Keane,* 977 F.Supp. 577, 581 (N.D.N.Y.1997) (Kahn, J.).

FN6. The petitioner bears the burden of

demonstrating cause for her procedural default and resulting prejudice. *See Simpson v. Portuondo,* 01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

**\*7** The finding that Long has failed to establish cause for her procedural default does not necessarily preclude this Court from considering her procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly invoke habeas review as to such claims if the court is convinced of the petitioner's actual innocence. On this question, the Second Circuit has observed that:

The Supreme Court has explained that the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo,* 513 U.S. 298, 321-22, 115 S.Ct. 851, 130 L.Ed.2d 808 ... (1995). " "[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 ... (1998). "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " *Id.* (citing *Schlup,* 513 U.S. [at] 327-28 ... (some internal citation marks omitted)).

*Sweet v. Bennett,* 353 F.3d 135, 142 (2d Cir.2003); *see also D'Alessandro,* 2005 WL 3159674, at *8; *Marengo,* 342 F.Supp.2d at 228. Thus, in considering whether a petitioner's procedural default may be excused under this "actual innocence" exception, federal courts are to consider the sufficiency of the evidence offered against the petitioner at his or her trial. *Dixon,* 293 F.3d at 81.

Considering first Long's convictions for the crimes of first

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

degree assault, this Court notes that "New York Penal Law § 120.10(1) provides that a person is guilty of first degree assault when, '[w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person or to a third person by means of a deadly weapon or dangerous instrument." ' *Jackson v. Lacy,* 74 F.Supp.2d 173, 178 (N.D.N.Y.1999) (McAvoy, C.J.).

With respect to Long's assault conviction relating to Monell, the trial transcript reflects that soon after Monell observed Long firing her weapon at Parson, Monell heard Parson's friend, Charlene Gause, directing Parson to shoot Monell.[FN7] Trial Tr. at 165. Soon thereafter, Monell discovered that she had been shot. Trial Tr. at 165-66. Additionally, a forensic detective with the Albany Police Department testified that the location of seven shell casings found at the crime scene was consistent with having been fired from the area where Long was observed standing by Monell and Parson. Trial Tr. at 270-77. The foregoing evidence amply supported the jury's finding that Long was guilty of the first degree assault of Monell.[FN8]

> FN7. Monell testified that on the date of the shooting, she inquired of Gause why she was asking Long to shoot Monell, however Gause responded by stating: "You better back up, you better back up." Trial Tr. at 165.

> FN8. Long never claimed in the state courts that the evidence at trial was insufficient to establish her guilt of the assault charge relating to Monell. *See* App. Br. In fact, at trial, Long's defense counsel conceded that there was "a factual basis to send that [charge] to the jury." Trial Tr. at 350-51.

As to Long's conviction on the first degree assault relating

to Temple, after reviewing the relevant trial testimony relating to this charge, this Court adopts the Appellate Division's determination that the trial testimony "provided a valid line of reasoning and permissible inferences from which any rational trier of fact could find [Long] guilty beyond a reasonable doubt of all the essential elements of the crime of assault in the first degree" as to Temple. *See Long,* 291 A.D.2d at 722, 738 N.Y.S.2d 721.[FN9]

> FN9. This Court discusses in more detail the evidence adduced at trial relating to Long's conviction on the assault of Temple *infra* in conjunction with Long's habeas challenge relating to the trial court's failure to grant her motion to dismiss the count in the Indictment accusing petitioner of that crime.

**\*8** Turning to Long's conviction of second degree criminal possession of a weapon in conjunction with her assault on Monell, the Court notes that in New York, a person is guilty of that crime when, with the intent to use a weapon unlawfully against another, a person "possesses a loaded firearm." *See* New York Penal L. § 265.03. The evidence adduced at trial was more than sufficient to establish that on May 1, 1995, Long possessed a loaded firearm which she intended to use unlawfully with respect to Monell. *See, e.g.,* Trial Tr. at 134, 164-66.

In sum, after carefully considering this issue, this Court concludes that petitioner has failed to meet her burden of proving that she is actually innocent of any of the crimes of which she was convicted.[FN10] Therefore, this Court finds no basis to overlook Long's procedural default regarding the above-referenced claims, and accordingly denies her first, fourth and sixth grounds for relief (delineated by petitioner as Grounds "A," "D," and "F," respectively) as procedurally forfeited. *See, e.g., Lutes,* 2005 WL 2180467, at \*9; *Ayuso v. Artuz,* No. 99 CIV 12015, 2001

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

WL 246437, at *8-9 (S.D.N.Y. Mar.7, 2001); *DeLeon v. Hanslmaier,* No. CV-94-5512, 1996 WL 31232, at *3-4 (E.D.N.Y. Jan.19, 1996), *aff'd,* 104 F.3d 355 (2d Cir.1996).

> FN10. The petitioner bears the burden of proving actual innocence where he or she seeks federal review of procedurally defaulted habeas claims. *E.g., Speringo v. McLaughlin,* 202 F.Supp.2d 178, 189 (S.D.N.Y.2002).

C. *Remaining Claims*

1. *Standard of Review*

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), brought about significant new limitations upon the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. Under the AEDPA, a federal court cannot grant habeas relief to a state prisoner on a claim:

that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177-78 (2d Cir.2003); *Boyette v. LeFevre,* 246 F.3d 76, 88 (2d Cir.2001). The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry,* 403 F.3d at 66; *Boyette,* 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court can grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*9 *Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Francis S. v. Stone,* 221 F.3d 100, 108-09 (2d Cir.2000)).

In *Sellan v. Kuhlman,* 261 F.3d 303, 309-10 (2d Cir.2001), the Second Circuit answered the question of whether deference under section 2254(d) is mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim. Specifically, that court held that deference is

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

required if the claim was presented to the state court and there was an adjudication on the merits, even though the state court's decision lacks explicit reference to the federal claim or to federal case law. *Sellan,* 261 F.3d at 311-12. As the Second Circuit explained, the plain meaning of § 2254(d)(1) dictates that:

[f]or the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—*even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."*

 *Sellan,* 261 F.3d at 312 (emphasis added), *see also Ryan v. Miller,* 303 F.3d 231, 246 (2d Cir.2002). When a state court's decision is found to be decided "on the merits," that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal court engaged in habeas review is to determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable." *Williams,* 529 U.S. at 409; *see also Sellan,* 261 F.3d at 315. The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error," though "the increment need not be great[.]" *Francis S.,* 221 F.3d at 111.

2. *Substance of Long's Remaining Claims*

A. *Motion to Dismiss Indictment*

In her second ground for relief, Long argues that the trial court wrongfully failed to dismiss the third count in the Indictment despite the fact that insufficient evidence was adduced at trial establishing her guilt of that charge. *See* Petition, Ground B; Supporting Mem. at 7-10; *see also* Indictment, Count Three; App. Br. at 7-10.

At the close of the prosecution's proof, Long's counsel moved pursuant to CPL § 290.10 to dismiss, *inter alia,* Count Three of the Indictment, which accused Long of the first degree assault of Temple.[FN11] *See* Trial Tr. 351. The county court denied that application, concluding that there existed a sufficient factual basis to submit that Count to the jury for its consideration. Trial Tr. at 352.

FN11. That procedure under the CPL, which is now referred to as a request for a trial order of dismissal, is derived from the prior practice utilized to secure the same result-the directed verdict of acquittal. *Faux v. Jones,* 728 F.Supp. 903, 907 (W.D.N.Y.1990) (citing CPL § 290.10).

*10 A motion under CPL § 290.10 must be denied where the trial evidence, when viewed in a light most favorable to the prosecution, is legally sufficient to support a guilty verdict. *People v. Phillips,* 256 A.D.2d 733, 734-35, 682 N.Y.S.2d 685 (3d Dept.1998) (citation omitted). A claim based upon a trial court's failure to dismiss a charge in an indictment is properly considered a challenge to the sufficiency of evidence relating to such charge. *See Gwathney v. Sabourin,* 269 F.Supp.2d 63, 66 (E.D.N.Y.2003); *Phillips,* 256 A.D.2d at 734-35, 682 N.Y.S.2d 685 (citation omitted). Accordingly, federal courts considering habeas claims premised upon a trial

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

court's failure to dismiss one or more counts in an indictment must determine whether the state court's decision denying the motion to dismiss is contrary to, or involved an unreasonable application of, Supreme Court case law governing evidence sufficiency claims. *E.g., Ubrich v. Murphy,* No. 98-CV-0655, slip op. at 41 (N.D.N.Y. Apr. 4, 2003) (Peebles, M.J.), *adopted,* No. 98-CV-0655, Dkt. No. 28, slip op. at 2 (N.D.N.Y. May 13, 2003) (Scullin, C.J.).

i. *Clearly Established Supreme Court Precedent*

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he or she is charged. *See Fiore v. White,* 531 U.S. 225, 228-29, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001); *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A habeas petitioner claiming that there was insufficient evidence supporting a challenged conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324; *see also Schlup,* 513 U.S. at 323 n. 38; *United States v. Powell,* 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (citations omitted). Moreover, in reviewing the record, the court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson,* 443 U.S. at 319.

ii. *Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent*

The trial evidence established that on May 1, 1995, Traynham and Temple were across the street from the TC Club. Trial Tr. at 293. Soon after Traynham went into a nearby store, he heard gunshots. Trial Tr. at 293-94. Around that same time, both Parson and Monell observed Long near the TC Club brandishing a gun. Trial Tr. at 132, 163-64. Long was observed firing the weapon at Parson, Trial Tr. at 163-64, and around that same time Temple, who was near the TC Club on that date, sustained a life-threatening gunshot wound. Trial Tr. at 188-89, 294. Additionally, seven 9 mm shell casings were found in the area where Long was observed by Monell and Parson holding a gun, Trial Tr. at 270-77, evidence which strongly suggested that Long fired her weapon multiple times. The foregoing evidence, viewed collectively, is more than sufficient to surpass the relatively modest hurdle imposed by *Jackson* with respect to Long's conviction on the first degree assault charge relating to Temple. Therefore, this Court concludes that Long has not demonstrated that the Appellate Division's decision denying the aspect of her appeal which challenged the denial of her motion to dismiss the third count in the Indictment due to evidence insufficiency, *see Long,* 291 A.D.2d at 721-22, 738 N.Y.S.2d 721, is either contrary to, or involves an unreasonable application of, *Jackson* and its progeny. This Court accordingly denies her second ground for relief.

B. *Repugnant / Inconsistent Verdict*

**\*11** As noted above, the jury acquitted Long of the attempted murder charge relating to Monell (Count One), as well as the weapons possession charge which accused her of possessing a firearm and intending to use same unlawfully as to Temple (Count Five). *See* Trial Tr. at

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

652-55.

Long argues in this proceeding, as she did in state court, that the jury's verdict is repugnant because she was acquitted of the charge which accused Long of criminally possessing a weapon but convicted of the assault charge as to Temple, which required, *inter alia,* a finding by the jury that Long used a firearm in conjunction with such assault. *See* Petition, Ground C; Supporting Mem. at 11-15; *see also* App. Br. at 11-15; Indictment, Counts Three, Five.

i. *Clearly Established Supreme Court Precedent*

In *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), the Supreme Court opined that:

The most that can be said in [ ] cases [in which the jury renders an inconsistent verdict] is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

*Dunn,* 284 U.S. at 393 (internal quotation and citation omitted); *see also Powell,* 469 U.S. at 64-65 (quoting *Dunn* ). Since the Government is unable to seek review of the portion of the verdict that acquits a defendant due to the Double Jeopardy Clause of the United States Constitution, it is "unclear whose ox has been gored" by an inconsistent verdict. *Powell,* 469 U.S. at 65-66 (footnote omitted). Consequently, the Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review. *See Powell,* 469 U.S. at

65-66; *Bradshaw v. Stumpf,* 545 U.S. 175, 125 S.Ct. 2398, 2409, 162 L.Ed.2d 143 (2005) ("inconsistent jury verdicts may be enforced") (citing *Powell, Dunn* ) (Souter and Ginsburg, concurring); *Dowling v. United States,* 493 U.S. 342, 353-54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) ("inconsistent verdicts are constitutionally tolerable") (citation omitted); *Harris v. Rivera,* 454 U.S. 339, 345, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) ("[i]nconsistency in a verdict is not a sufficient reason for setting it aside").

ii. *Contrary To, or Unreasonable Application of, Supreme Court Precedent*

In denying Long's appellate claim relating to the alleged inconsistency of the jury's verdict, the Appellate Division opined:

Defendant reasons that she cannot be guilty of shooting Temple if the jury also determined that she did not possess a gun. However, it is equally possible that the verdict resulted from the jury's assessment that, although she possessed a loaded handgun, she did not have the intent to use it unlawfully against Temple (*see,* Penal Law § 265.03[2] ). The jury could have determined that she acted recklessly by creating a grave risk of death to Temple causing serious physical injury (*see,* Penal Law § 120.10[3] ). Therefore, "[t]he acquittal of the former ... did not negate [any] elements of the latter [.]" Where, as here, a rational theory exists to support each verdict, the jury's determination will not be disturbed.

*12 *Long,* 291 A.D.2d at 722-23, 738 N.Y.S.2d 721 (citation to case law omitted). Thus, the Third Department found that the jury's verdict was not, in fact, inconsistent.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 13

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Since the present habeas claim is rooted in the assumption that the jury's verdict was repugnant, *see* Petition, Ground C, this Court initially considers whether the verdict was, in fact, inconsistent.

In instructing the jury on the first degree assault charge relating to Monell, the trial court charged the jury that the prosecution was required to establish that on or about May 1, 1995, Long, "did, with intent to cause serious physical injury to another person, cause[ ] such injury to such person ... by means of a deadly weapon." Trial Tr. at 613-14. In sharp contrast to that charge, when instructing the jury as to the first degree assault charge relating to Temple, the county court instructed the jury that the prosecution was required to establish that on or about May 1, 1995, "under circumstances evincing a depraved indifference to human life, [Long] recklessly engaged in conduct which created a grave risk of death to another person, and thereby caused serious physical injury to another person." Trial Tr. at 616-17. Thus, unlike the assault charge relating to Monell, the jury was *not* required to find that Long *intended* to cause serious physical injury to Temple in considering whether she was guilty of that assault charge. Both weapons possession charges, however, required the jury to find, *inter alia,* that Long possessed a firearm *with the intent to use that weapon unlawfully. See* Trial Tr. at 622, 624 (weapons possession charge relating to Monell); Trial Tr. at 626-28 (weapons possession charge relating to Temple). Thus, unlike the assault charge relating to Temple, the jury was instructed that it could *only* find Long guilty of the weapons possession charge relating to that victim if it found, *inter alia,* that: "she possessed [a loaded pistol] *with intent to use it unlawfully against ... Robert Temple."* Trial Tr. at 627.

Under New York law, "[t]wo counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other." CPL §

300.30(5). "Whether verdicts are repugnant or inconsistent ... is determined by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled." *People v. Loughlin,* 76 N.Y.2d 804, 806, 559 N.Y.S.2d 962, 559 N.E.2d 656 (1990) (citing *People v. Tucker,* 55 N.Y.2d 1, 6-7, 447 N.Y.S.2d 132, 431 N.E.2d 617 (1981)).

In the state court matter below, the Appellate Division determined that the jury could have properly found both: i) that Long acted recklessly when she shot Temple, thereby creating a grave risk of death to him and causing him serious physical injury; and ii) that although Long possessed a loaded handgun on May 1, 1995, she did not *intend* to use it unlawfully against Temple. [FN12] *Long,* 291 A.D.2d at 722-23, 738 N.Y.S.2d 721. This Court agrees with the Third Department's determination that the jury's verdict was in no way inconsistent or repugnant. Thus, Long cannot prevail on her third ground for relief, which is premised upon the assumption that the jury's verdict was inconsistent.

> [FN12.] Unlike the evidence adduced at trial regarding shooting victim Monell, the testimony adduced at trial established that Temple merely happened to be a bystander near the TC Club at the time Long fired her weapon. Trial Tr. at 293-94.

**\*13** Additionally, as noted above, the Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review. *See Powell,* 469 U.S. at 65-66. Since an allegedly inconsistent verdict is not a sufficient reason for setting it aside, *Harris,* 454 U.S. at 345, the Appellate Division's decision denying this aspect of Long's appeal is neither contrary to, nor an unreasonable application of, the above-referenced

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Supreme Court authority. Therefore, for this reason as well, this Court must deny Long's third ground for relief. *E.g., Brunson v. Tracy,* 378 F.Supp.2d 100, 110 (E.D.N.Y.2005) ("[i]t is well-settled that federal habeas relief is unavailable for inconsistent verdicts") (citations omitted); *Vassell v. McGinnis,* No. 04-CV-0856, 2004 WL 3088666, at *6 (E.D .N.Y. Dec. 22, 2004); *Muldrow v. Herbert,* 299 F.Supp.2d 166, 170 (W.D.N.Y. Feb.3, 2004) ("an allegedly inconsistent verdict does not present a constitutional violation. Therefore, such a claim is not even cognizable on habeas review"), *appeal dismissed,* No. 04-1839pr (2d Cir. Jan. 20, 2005).

C. *Harsh and Excessive Sentence*

In her fifth claim, Long alleges that in light of her age, background, familial obligations and lack of criminal history, the sentence imposed on her was harsh and excessive.[FN13] Petition, Ground E. She further alleges that the sentences "violate[ ] New York State and Federal Sentencing Guidelines." Petition, Ground E.

> FN13. This claim was asserted by Long in her direct appeal. *See* App. Br. at 20-24.

These claims, however, fail to acknowledge the established authority which holds that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (citing *Underwood v. Kelly,* 692 F.Supp. 146 (E.D.N.Y.1988), *aff'd mem.,* 875 F.2d 857 (2d Cir.1989)); *see also Brown v. Donnelly,* 371 F.Supp.2d 332, 343-44 (W.D.N.Y.2005); *Jackson,* 74 F.Supp.2d at 181 ("[i]t is well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law"). Although petitioner now claims that the sentences imposed on her were illegal, *see* Petition, Ground E, the Court notes that

in Long's direct appeal, appellate counsel explicitly acknowledged that the sentences imposed on her client were authorized by New York law. *See, e.g.,* App. Br. at 20 (counsel conceding that the imposed sentences were "authorized by law").

Moreover, the Court's review of Long's sentences establishes that the imposed sentences were consistent with New York Penal Law. For example, Long was sentenced to terms of five to fifteen years imprisonment on each of her first degree assault convictions. *See* Record at 130-31. The Appellate Division has specifically noted that such a sentence for a conviction of that crime is "within permissible statutory ranges" in New York. *See People v. Duncan,* 279 A.D.2d 887, 889, 720 N.Y.S.2d 578 (3d Dep't), *leave denied,* 96 N.Y.2d 828, 729 N.Y.S.2d 448, 754 N.E.2d 208 (2001). Similarly, Long's sentence of five to fifteen years imprisonment on her weapons possession conviction, Record at 131, has been explicitly acknowledged as authorized under New York law. *See People v. Rodriguez,* 276 A.D.2d 326, 326-27, 714 N.Y.S.2d 267 (1st Dep't 2000), *leave denied, People v. Rodriguez,* 96 N.Y.2d 738, 722 N.Y.S.2d 805, 745 N.E.2d 1028 (2001).[FN14]

> FN14. As to Long's claim relating to the United States Sentencing Guidelines, *see* Petition, Ground E, the Court finds that Long has not articulated how the United States Sentencing Guidelines are germane, in any way, to her convictions, which arose out of state court prosecutions based upon Long's violation of New York's penal laws.

**\*14** With respect to the consecutive nature of the sentences imposed on Long regarding the first degree assault convictions,[FN15] this Court notes that the discretionary power of trial courts in New York "includes

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

the ability to impose consecutive penalties for multiple crimes." *People v. Ramirez,* 89 N.Y.2d 444, 450, 654 N.Y.S.2d 998, 677 N.E.2d 722 (1996) (citing *Matter of Walker v. Walker,* 86 N.Y.2d 624, 629, 635 N.Y.S.2d 152, 658 N.E.2d 1025 (1995)) (other citation omitted). "[E]ven if the statutory elements of multiple offenses overlap, sentences may be imposed to run consecutively when multiple offenses are committed through separate and distinct acts, though they are part of a single transaction." *Ramirez,* 89 N.Y.2d at 451, 654 N.Y.S.2d 998, 677 N.E.2d 722 (citing *People v. Laureano,* 87 N.Y.2d 640, 643, 642 N.Y.S.2d 150, 664 N.E.2d 1212 (1996)) (other citation omitted).

> FN15. The trial court imposed consecutive sentences with respect to the assault convictions; the sentence on the weapons possession conviction was ordered to run concurrent with the other sentences imposed by the county court. Record at 130-31.

Long's assault on two different victims-Monell and Temple-clearly constitutes separate acts which permitted the county court to impose consecutive sentences. *See DeSordi v. Walker,* No. 98-CV-1351, slip op at 31-32 (N.D.N.Y. Mar. 7, 2002) (Sharpe, M.J.) ("the stabbing of separate victims clearly constituted separate acts, [rendering permissible] the imposition of consecutive sentences") (citations omitted), *adopted DeSordi v. Walker,* No. 98-CV-1351 (N.D.N.Y. July 30, 2002) (Kahn, J.), *aff'd,* 84 Fed.Appx. 160 (2d Cir. Jan.12, 2004), *cert. denied sub nom. DeSordi v. Burge,* 543 U.S. 811, 125 S.Ct. 44, 160 L.Ed.2d 15 (2004). Thus, the sentences imposed on Long, including the consecutive nature of some of those sentences, are clearly permitted by state law.

Arguably, this ground could be construed as a claim that

the imposed sentences constitute a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." *Rummel v. Estelle,* 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel,* 445 U.S. at 272; *see Harmelin v. Michigan,* 501 U.S. 957, 995, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Eighth Amendment only forbids sentences which are "grossly disproportionate" to the crime). Sentences of imprisonment that are within the limits of valid state statutes are simply not cruel and unusual punishment in the constitutional sense. *Brumfield v. Stinson,* 297 F.Supp.2d 607, 622 (W.D.N.Y.2003) (citing *Thompson v. Lord,* No. 97-CV-0792, 2002 WL 31678312, at *8 (N.D.N.Y. Nov. 8, 2002) (Peebles, M.J.)) (other citations omitted) [, *adopted, Thompson v. Lord,* No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.) ].

Long has not provided anything in support of her petition which suggests that either the terms of imprisonment or consecutive nature of the sentences imposed on her is "grossly disproportionate" to her crimes. *E.g., Harmelin,* 501 U.S. at 995. This Court therefore finds no basis upon which it may properly find that Long is entitled to habeas relief due to the sentences she received as a consequence of her convictions and accordingly denies ground E in her petition.

D. *Failure to Consider Appeal of Denial of CPL 440.20 Motion*

**\*15** In her seventh and final ground, petitioner argues that although the Third Department granted her leave to appeal the denial of her CPL 440.20 Motion, that court nevertheless "refused to hear [s]aid motion" in violation of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

her constitutional rights. *See* Petition, Ground "G." [FN16]

> FN16. In her seventh ground for relief, Long also refers to a "reconsideration motion." *See* Petition, Ground G. None of the state court records provided to this Court reflect any motion for reconsideration. Thus, it appears as though Long's reference to a "reconsideration motion" merely constitutes a typographical error on the part of petitioner.

This claim appears to allege that the Third Department wrongfully determined that Long failed to assert any appellate claim relating to her CPL 440.20 Motion and had therefore abandoned those claims. *See Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721. Therefore, this Court briefly reviews Long's CPL 440.20 Motion, together with the claims raised in her appellate brief, in order to ascertain whether the Third Department's determination that Long abandoned any appellate claim relating to the denial of her CPL 440.20 Motion is supported by the record.

Long's CPL 440.20 Motion alleged that the county court's imposition of consecutive sentences violated: i) the provisions of both the federal and New York State constitutions which prohibit individuals from being placed in Double Jeopardy; and ii) New York's Penal Law which addresses the issue of when a trial court may properly impose consecutive sentences. *See* CPL 440.20 Motion. Although Long's appellate brief made one brief reference to the CPL 440.20 Motion filed by Long, *see* App. Br. at 21, that brief never referred to any of the arguments asserted in the CPL 440.20 Motion. Nor did that brief incorporate by reference any of the claims asserted in that motion. *See* App. Br. Thus, the appellate brief never asserted as a basis for relief any claim that the sentences imposed on Long violated the Double Jeopardy clauses of

either the state or federal constitutions, or which argued that the consecutive nature of the sentences rendered them illegal under New York law.[FN17] *See* App. Br. Rather, the portion of the appellate brief which challenged the sentences imposed on Long was limited to an argument that the sentences were harsh and excessive. *See* App. Br. at 20-24.

> FN17. As noted *ante* by this Court in addressing Long's claim that the imposed sentences were harsh and excessive, appellate counsel *conceded* in her brief that the sentences imposed by the trial court were "authorized by law." *See* App. Br. at 20.

The foregoing conclusively establishes that although Long was afforded the opportunity to challenge the denial of her CPL 440.20 Motion on appeal, appellate counsel chose, apparently for strategic reasons, to refrain from asserting any claims relating to the denial of that motion in counsel's direct appeal of Long's conviction. Thus, to the extent Long now seeks federal habeas relief based upon a claim that the Appellate Division erred in either: i) concluding that Long failed to assert any of the claims raised by her in her CPL 440.20 Motion on appeal; or ii) deeming Long to have abandoned those claims, this Court finds such claims to be contradicted by the record and entirely without merit.

### III. *CONCLUSION*

After carefully considering all of the submissions before the Court, the undersigned concludes that Long has procedurally defaulted on her claims which allege that: i) she was denied her right to a fair because testimony relating to an uncharged crime was admitted into evidence against her at trial; ii) the trial court mischaracterized the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

allegations asserted against her in Count Three of the Indictment; and iii) her sentences are illegal and violative of both the federal and New York state constitutions. Since petitioner has not established cause for her procedural default concerning such claims or that she is actually innocent of any of the crimes of which she stands convicted, this Court denies those claims as procedurally barred. Furthermore, after considering the remaining grounds raised by Long in her petition, this Court finds that such claims lack merit and do not afford Long a basis for federal habeas relief. Thus, those claims are denied on the merits.

**\*16** IT IS THEREFORE HEREBY

ORDERED, that Long's habeas petition (Dkt. No. 1) is DENIED and DISMISSED, and it is further

ORDERED, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action by regular or electronic mail, and it is further

ORDERED, that the state court records be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

IT IS SO ORDERED.

N.D.N.Y.,2006.
Long v. Lord
Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Esau STALEY III, Petitioner,
v.
Charles GREINER, Respondent.
No. 01Civ.6165(JSR)(DF).

Feb. 6, 2003.

Following affirmance, 692 N.Y.S.2d 314, of state convictions for attempted rape and first-degree sexual abuse, petition for federal habeas relief was brought. The District Court, Freeman, United States Magistrate Judge, recommended that: (1) alleged 72-hour delay between arrest and arraignment was not presumptively prejudicial for speedy trial purposes, and (2) claims of alleged grand jury defects, i.e. improper amendment of indictment and failure to allow defendant's testimony, were not cognizable on federal habeas review.

Dismissal of petition recommended.

West Headnotes

**[1] Habeas Corpus 197 ☞ 423**

197 Habeas Corpus

197I In General
197I(D) Federal Court Review of Petitions by State Prisoners
197I(D)6 State's Reliance on or Waiver of Procedural Bar or Want of Exhaustion
197k423 k. State Court Consideration of Merits. Most Cited Cases
State trial court's alleged constitutional violation forming predicate for federal habeas petitioner's ineffective assistance of counsel claim would be treated as exhausted even though not objected to in trial court, since trial court had addressed merits of constitutional claim. 28

U.S.C.A. §2254(b)(1)(A).

**[2] Habeas Corpus 197 ☞ 409**

197 Habeas Corpus

197I In General
197I(D) Federal Court Review of Petitions by State Prisoners
197I(D)5 Availability of Remedy Despite Procedural Default or Want of Exhaustion
197k409 k. Prejudice. Most Cited Cases
Where federal habeas petitioner failed to show cause for his procedural defaults in state court, it was unnecessary for federal district court to consider issue of prejudice before dismissing claims as procedurally barred. 28 U.S.C.A. §2254.

**[3] Criminal Law 110 ☞ 264**

110 Criminal Law

110XIV Arraignment
110k264 k. Requisites and Sufficiency of Arraignment. Most Cited Cases
Alleged 72-hour delay between arrest and arraignment was not presumptively prejudicial for purposes of right to speedy trial. U.S.C.A. Const.Amend. 6.

**[4] Habeas Corpus 197 ☞ 474**

197 Habeas Corpus

197II Grounds for Relief; Illegality of Restraint
197II(B) Particular Defects and Authority for Detention in General
197k474 k. Indictment, Information, Affidavit, or Complaint. Most Cited Cases
Assuming that state indictment had been improperly amended and that amendment violated defendant's right to be tried only on charges presented to grand jury, claim was not cognizable on federal habeas review since right to have charges presented to grand jury was state-created, not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

federal right. 28 U.S.C.A. §2254.

**[5] Habeas Corpus 197 ⚷ 473**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k473 k. Grand Jury. Most Cited Cases
    Claim of defect in state grand jury process, i.e. that due process was violated when defendant was not given opportunity to testify before grand jury, was not cognizable on federal habeas review. 28 U.S.C.A. §2254.

Esau Staley III, Green Haven Correctional Facility, Drawer B, Stormville, NY, pro se.

REPORT AND RECOMMENDATION

FREEMAN, Magistrate J.

*INTRODUCTION*

**\*1** Petitioner Esau Staley III ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State Supreme Court, New York County. Upon a jury verdict, Petitioner was found guilty of one count of Attempted Rape in the First Degree and one count of Sexual Abuse in the First Degree. Petitioner was sentenced to a term of 15 years on the rape charge and seven years on the sexual abuse count. He is currently incarcerated at Green Haven Correctional Facility.

Petitioner challenges his conviction and asserts that (1) he was denied effective assistance of counsel; (2) his arraignment was improperly delayed; (3) the indictment against him was impermissibly amended; and (4) his due process rights were violated because he was not given an opportunity to testify before the grand jury. (*See* Pet. at § 12.) [FN1] Respondent argues that the petition should be dismissed on the grounds that Petitioner's claims are unexhausted, procedurally barred, or without merit. (*See* Resp. Mem. at 10–17.) [FN2] For the reasons stated below, I recommend that the petition be dismissed.

    FN1. "Pet." refers to Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254,

dated April 25, 2001, and filed on July 9, 2001.

    FN2. "Resp. Mem." refers to Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated April 17, 2002.

I. *FACTUAL BACKGROUND*

_____ According to the testimony at trial, on the morning of October 23, 1995, Bah Fatoumata, ("Fatoumata") a 36–year old woman, arrived at work at the Bebe Hair Braiding Salon at 145 Eighth Avenue in Harlem. (Tr. at 100.) [FN3] She was the first to arrive, so she unlocked the front door. (*Id.*) The salon's glass door was covered by a large poster, thereby concealing the salon's interior from the street. (*Id.* at 104, 108.)

    FN3. "Tr." refers to the transcript of Petitioner's trial, which took place from May 20, 1996 through May 23, 1996.

Shortly thereafter, Petitioner opened the front door of the salon and began talking to Fatoumata. (*Id.* at 101.) Fatoumata could not understand what he was saying, but Petitioner gestured in such a way as to indicate that he wanted his hair braided. (*Id.*) Fatoumata pointed to her watch to indicate that he should come back later. (*Id.* at 101, 115.) Petitioner then left the salon. (*Id.*)

Approximately 20 minutes later, Petitioner returned to the salon and began speaking again to Fatoumata. (*Id.*) Fatoumata testified that she was frightened by Petitioner, so she told him that she did not speak English and again pointed to her watch to indicate that he should come back later. (*Id.* at 101–02, 117.) Petitioner, however, closed the door and walked towards Fatoumata. (*Id.* at 102.) Petitioner then grabbed Fatoumata and pulled her onto the floor. (*Id.*) Fatoumata and Petitioner began to struggle as Petitioner attempted to rape Fatoumata. (*Id.* at 102–04, 120–130.) Petitioner grabbed a pair of scissors that were nearby, and attempted to cut Fatoumata's pants, and to stab her in the neck. (*Id.* at 102, 124.) After a struggle over the scissors, Petitioner cut Fatoumata's face near her right eye. (*Id.* at 104.) During the struggle, Fatoumata managed to rip one of the posters off the glass door, hoping that someone on the street would then see and help her. (*Id.* at

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

104–05, 235.)

**\*2** At some point between 9:00 a.m. and 10:00 a.m. that morning, Lacine Kamara ("Kamara") was bringing his girlfriend, Mawa Kata ("Kata"), to work at the salon. (*Id.* at 248.) He saw that the poster had been pulled down, and spotted two feet on the ground inside the store with the toes pointing up. (*Id.* at 248–50.) Kamara and Kata approached the salon to investigate. (*Id.* at 250 .) When Kata pushed the door open, Petitioner got up and ran from the store. (*Id.* at 251.) After spotting Fatoumata in the store, covered with blood, Kamara chased after Petitioner. (*Id.* at 251–52.) He was joined by some uniformed police officers and one of them, Police Officer Guillermina Tavares ("Tavares"), apprehended Petitioner. (*Id.* at 252, 260–61.) _____ Kamara returned to the salon immediately after Petitioner was taken into custody. (*Id.* at 252.) Tavares arrived at the salon shortly thereafter. (*Id.* at 261–62.) At that time, she found Fatoumata lying on the ground outside of the store near the scissors, which Tavares collected as evidence. (*Id.* at 262–65.) Fatoumata had a cut by her right eye, and acted as if she were in shock. Since she did not speak English, Fatoumata was unable to tell the police what had happened. (*Id.* at 134, 263.) A bystander told Tavares that Petitioner had tried to rob Fatoumata. (*Id.* at 272.)

Fatoumata was taken by ambulance to Columbia Presbyterian Hospital, where she was met by her husband and brother. (*Id.* at 193–94.) With her family interpreting, Fatoumata told the hospital staff what had happened. (*Id.* at 194–95.) On November 8, 1995, Fatoumata picked Petitioner out of a line-up. (*Id.* at 167.)

## II. *PROCEDURAL BACKGROUND*

### A. *Pre–Trial Proceedings*

_____ On October 24, 1995, the day after his arrest, Petitioner was taken to Criminal Court, Supreme Court, New York County, to be arraigned on a felony complaint. (*See* Respondent's Affidavit in Opposition to Petition for a Writ of Habeas Corpus, sworn to April 1, 2002 ("Resp.Aff."), Ex. G.) The government asserts that Petitioner was, in fact, arraigned on October 24, although his case was then adjourned to October 27, in order to

determine whether the grand jury would return an indictment against him. (*See* Resp. Mem. at 13.) It appears from the record that the government is correct on this point, and it also appears that counsel appeared for Petitioner at the time of his arraignment on October 24. (Resp. Aff., Exs. G and M.) Petitioner, however, disputes that he was arraigned on October 24, contending that he was not actually arraigned until October 27. (*See* Resp. Aff., Exs. F and G.) [FN4]

> [FN4]. Although, at one point in his petition, Petitioner seems to acknowledge that he was arraigned on October 24, 1995 (*see* Petition § 15), this is at odds with what appears to be one of his principal arguments that his arraignment was unlawfully delayed.

On November 1, 1995, Petitioner was indicted on one count each of first degree rape, sexual abuse, and second degree-burglary. On April 10, 1996, the burglary count was dismissed. On May 2, 1996, a *Wade/Huntley* hearing was held before the Honorable Franklin R. Weissberg. [FN5] (*See* Resp. Mem. at 6; Resp. Aff., Exs. A and B.) In that hearing, Petitioner moved to suppress his post-arrest statements and the victim's identification testimony. (*Id.*) On May 16, 1996, Justice Weissberg denied Petitioner's motion to suppress the identification evidence, but granted a portion of Petitioner's motion to suppress his statements. (*Id.*)

> [FN5]. This hearing was held pursuant to: (1) *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), to determine whether Petitioner's pretrial identification was the result of impermissibly suggestive procedures, and (2) *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), to determine whether any statements made by Petitioner should be suppressed.

_____ B. *Jury Selection and Trial*

**\*3** _____ Petitioner was tried by a jury from May 20, 1996, through May 23, 1996. At trial, the prosecution's witnesses were Fatoumata, Kamara, Tavares, and Detective John Savino. Petitioner presented no witnesses

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

and did not testify on his own behalf. On May 23, 1996, the jury found Petitioner guilty of first degree rape and first degree sexual abuse. (Tr. at 391.) On June 10, 1996, Petitioner was sentenced to a term of 15 years on the rape charge and seven years on the sexual abuse count. *See People v. Staley,* 262 A.D.2d 30, 30, 692 N.Y.S.2d 314 (1st Dep't 1999).

C. *Direct Appeal*

Petitioner appealed his conviction to the Appellate Division, First Department. On appeal, he raised the following two claims: (1) the trial court erred in denying Petitioner's request to call Fatoumata to testify at the *Wade* hearing; and (2) that the trial court erred in denying Petitioner's motion for a mistrial based on the interpreter's alleged mis-translation of Fatoumata's testimony. (*See* Resp.App. Ex. B.) On September 30, 1999, the Appellate Division affirmed Petitioner's conviction. *See People v. Staley,* 262 A.D.2d 30, 692 N.Y.S.2d 314 (1st Dep't 1999). In its opinion, the Appellate Division concluded that the "hearing court properly denied defendant's request for the complainant to testify at the *Wade* hearing." 262 A.D.2d at 30, 692 N.Y.S.2d at 314. Additionally, the Appellate Division held that Petitioner "failed to establish that there was any error in the translation of the complainant's testimony." *Id.,* 692 N.Y.S.2d at 315.

Petitioner sought leave to appeal the affirmance of his conviction. (*See* Resp.App. Ex. D.) On June 28, 1999, leave to appeal to the Court of Appeals was denied. *See People v. Staley,* 93 N.Y.2d 979, 695 N.Y.S.2d 66, 716 N.E.2d 1111 (1999).

D. *Petitioner's Motion To Vacate The Conviction*

On June 27, 2000, Petitioner, proceeding *pro se,* filed a motion in the trial court, seeking to vacate the judgment pursuant to New York Criminal Procedure Law §§ 440.10(1)(h). (*See* Resp. Aff. Ex. F.) Petitioner claimed that he was entitled to post-conviction relief on the ground that he was denied effective assistance of trial counsel. Specifically, Petitioner alleged that his trial attorney failed: (1) to challenge an alleged 72–hour delay between the time of Petitioner's arrest and his arraignment; (2) to challenge the legality of the initial accusatory instrument, which, according to Petitioner, contained charges different than those upon which he was indicted; (3) to advise

Petitioner of his right to testify before the grand jury; and (4) to challenge the trial court's ruling concerning alleged errors of translation by the official court interpreter. (*See id.*) The State opposed Petitioner's motion on November 6, 2000. (*See id.,* Ex. G.)

By written opinion dated December 13, 2000, the trial court denied Petitioner's Section 440.10 motion, stating:

Despite some apparent confusion on defendant's part, the record clearly reveals that defendant was arraigned in a timely manner. Defendant also asserts that his trial lawyer was ineffective in failing to challenge the legality of the felony complaint. Regardless of the sufficiency of the felony complaint, however, the return of an indictment by the Grand Jury served to cure any alleged defect. As such, defendant's trial attorney's failure to raise these issues below did not constitute ineffective representation.

*\*4* In addition, defendant claims [*sic* ] that his attorney was ineffective because he failed to inform him of his right to testify before the Grand Jury is similarly denied. Assuming *arguendo* that this claim is true, a point which the People do not concede, a failure to effectuate a defendant's alleged desire to testify before a Grand Jury does not rise to a deprivation of meaningful representation. (citation omitted).

Finally, the remaining purported error by the trial court, which involved the accuracy of the court interpreter's translation, was already unsuccessfully raised on direct appeal. As the underlying error complained of by the defendant was not error at all, it clearly cannot be used to form the basis for a finding of ineffectiveness of counsel.

(*Id.,* Ex. H.)

On March 20, 2001, the Appellate Division denied Petitioner's motion for leave to appeal the denial of his Section 440.10 motion. (*See id.,* Ex. K.) The instant petition followed.

III. *DISCUSSION*

A. *Exhaustion*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

_____ 1. *Legal Standards*

_____ A federal court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997). To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "opportunity to pass upon and correct alleged violations of ... [a] prisoner's federal rights." *Picard,* 404 U.S. at 275 (citation omitted).

The standards for presenting federal constitutional claims to state courts are not so stringent as to require the recitation of "book and verse on the federal constitution." *Picard,* 404 U.S. at 278 (citation omitted). However, the state courts must be "apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' " *Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997) (quoting *Daye v. Attorney Gen.,* 696 F.2d 186, 191 (2d Cir.1982) (*en banc* )). Petitioners can ensure that state courts are "alerted to the fact that [they] are asserting claims under the United States Constitution," *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995), by presenting their claims in a fashion demonstrating either

(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) [an] assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) [an] allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye,* 696 F.2d at 194; *accord Petrucelli v. Coombe,* 735 F.2d 684, 688 (2d Cir.1984). Once the state courts are apprised of the constitutional nature of a petitioner's claims, the exhaustion requirement is generally fulfilled when those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994) (citation omitted).

_____ 2. *Petitioner Has Presented a "Mixed" Petition.*

**\*5** _____ In this case, it appears that Petitioner has presented a "mixed petition," containing both exhausted and unexhausted claims. *See Zarvela v. Artuz,* 254 F.3d 374, 380 (2d Cir.2001).

Petitioner's first claim alleges ineffective assistance of counsel, a claim Petitioner raised previously in his Section 440.10 motion. As noted above, Petitioner asserted in that motion that his trial counsel was ineffective for failing to challenge certain purported constitutional violations involving, *inter alia,* the timing of Petitioner's arraignment, the appropriateness of the indictment on which he was tried, and the conduct of the grand jury proceedings. When Petitioner's Section 440.10 motion was denied by the trial court, Petitioner sought leave to appeal the denial of that motion to the Appellate Division. Once the Appellate Division denied leave to appeal, Petitioner's ineffective assistance claim was exhausted for purposes of habeas review. *See Klein v. Harris,* 667 F.2d 274 (2d Cir.1981) ("no appeal to the New York Court of Appeals lies from an order denying a motion for leave to appeal to the Appellate Division"), *overruled on other grounds by Daye,* 696 F.2d at 195; *Jackson v. Moscicki,* No. 99 Civ. 2427(JGK), 2000 WL 511642 at \*5 (Apr. 27.2000) (petitioner exhausted his ineffective assistance of counsel claim by raising it in a Section 440.10 motion and seeking leave to appeal to the Appellate Division). Therefore, to the extent the ineffective assistance claim now being asserted by Petitioner is the same as the claim he asserted in his Section 440.10 motion, the exhaustion requirement is satisfied.[FN6]

FN6. As discussed further *infra* (*see* n.9), the petition is not well drafted, and it is possible to construe Petitioner's present ineffective assistance claim as being different from the claim that he raised in the state court. The petition of a *pro se* litigant, however, should be liberally construed, *see Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.1983), and therefore the Court's first assumption should be that the claim being presented for habeas review is, in fact, the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

claim that Petitioner exhausted in the state court.

[1] In this habeas proceeding, Petitioner is now also directly challenging three of the alleged constitutional violations that formed the predicate of the ineffective assistance claim that he raised in his Section 440.10 motion. Because he never previously raised any of these alleged violations as separate and distinct claims—either in the Section 440.10 motion itself or on direct appeal—these additional claims are arguably all unexhausted. See Turner v. Artuz, 262 F.3d 118, 123 (2d Cir.2001) ("A court considering ineffective assistance might never reach the underlying constitutional claims, and the rejection of the ineffective assistance claims without detailed comment does not bespeak any necessary ruling on the underlying constitutional claims."). Nonetheless, it seems appropriate, under *Turner,* to consider one of these additional claims exhausted, in that the trial court effectively ruled on it, on the merits, in the context of the court's decision rejecting the ineffective assistance claim. *See id.* (expressly declining to address the situation where the state court clearly analyzed the merits of an underlying claim). More specifically, and as quoted above, the trial court held that Petitioner's counsel had not been ineffective for failing to object to an unconstitutional delay in Petitioner's arraignment, because, as a factual matter, *there was no* delay in arraignment. (*See supra* at 6.) Because the trial court actually addressed the purported delay, that particular underlying claim should be viewed as exhausted. The other two underlying claims, however, should be considered unexhausted, as they were never presented as separate claims—or separately analyzed—by the state court.

2. *Petitioner's Unexhausted Claims Should Be Deemed Exhausted and Procedurally Barred.*

**\*6** When ruling on a mixed petition, the Court may choose (1) to reach the merits of all claims in the petition—including the unexhausted claims—as long as the Court *denies* the claims on the merits, *see* 28 U.S.C. § 2254(b)(2)(2000); (2) to stay the petition and allow the petitioner a "reasonable" period of time to return to state court, exhaust the claims, and return to federal court, Zarvela, 254 F.3d at 381; (3) to dismiss the petition without prejudice to the petitioner's ability to re-file after

exhausting the unexhausted claims, *id.* at 380; or (4) to "deem" the claims exhausted, provided that the unexhausted claims no longer can be raised in state court, *see* Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); Bossett v. Walker, 41 F.3d 825, 828–29 (2d Cir.1994) (citations omitted); Grey v. Hoke, 933 F.2d 117, 120–21 (2d Cir.1991) (citations omitted).

In this instance, Petitioner could have raised his unexhausted claims in his one opportunity for direct appeal,[FN7] but did not do so. For this reason, he is now foreclosed from raising the claims collaterally in another Section 440.10 motion. *See* N.Y.Crim. Proc. § 440.10(2)(c) (barring collateral review of claims that could have been raised on direct appeal). Petitioner also cannot seek state review of his unexhausted claims pursuant to either a writ of error *coram nobis, see* People v. Gordon, 183 A.D.2d 915, 584 N.Y.S.2d 318 (2d Dep't 1992) (*coram nobis* relief only available for claims of ineffective assistance of appellate counsel) (citation omitted), or a state writ of habeas corpus, *see* People ex rel. Allah v. Leonardo, 170 A.D.2d 730, 565 N.Y.S.2d 331 (3d Dep't 1991) (state writ of habeas corpus unavailable where claim could have been raised on direct appeal) (citations omitted). Because Petitioner now has no procedural recourse to New York's courts to advance his unexhausted claims, those claims are appropriately deemed exhausted. *See* Bossett, 41 F.3d at 828–29; Grey, 933 F.2d at 120–21.

> FN7. *See* N.Y. Court Rules § 500.10(a) (permitting only one application for leave to appeal); *see also* N.Y.Crim. Proc. §§ 450.10 and 450.15 (allowing a petitioner only one chance to appeal).

When, however, a claim is deemed exhausted because of a procedural bar, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." Gray v. Netherland, 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *see also* Carmona v. United States Bureau of Prisons, 243 F.3d 629, 633 (2d Cir.2001). The only ways that Petitioner can overcome the procedural bar to review in this Court are to show (1) both

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

"cause" for failing properly to raise the claim in state court and "prejudice" resulting from the alleged constitutional error, or (2) that the failure to address the claim on habeas would result in a "fundamental miscarriage of justice." *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In this case, Petitioner cannot satisfy either standard, with respect to either of his unexhausted claims.

"Cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *see also Ayuso v. Artuz,* No. 99 Civ. 12015(AGS) (JCF), 2001 WL 246437, at *8 (S.D.N.Y. Mar. 7, 2001). Cause for a default exists where a petitioner can show that (1) "the factual or legal basis for a claim was not reasonably available to counsel," (2) " 'some interference by state officials' made compliance [with the procedural rule] impracticable," or (3) "the procedural default is the result of ineffective assistance of counsel." *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (citation omitted). "Prejudice" requires Petitioner to demonstrate that the alleged constitutional error worked to Petitioner's "*actual* and substantial disadvantage." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (emphasis in original).

**\*7** [2] Here, Petitioner cannot demonstrate any "cause" for his procedural defaults. He has not shown, and cannot show, that the factual or legal bases for his defaulted claims were not reasonably available at the time of his direct appeal. Nor has Petitioner alleged, and there is no evidence suggesting, that his failure to raise the claims on direct appeal resulted from either interference by state officials or ineffective assistance of appellate counsel. As Petitioner cannot show cause for his procedural defaults, this Court need not reach the question of whether Petitioner can show prejudice. *See Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

The Court may also excuse a procedural default where the petitioner "can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (citing *Coleman,* 501 U.S. at 750). This exception, however, is quite narrow; it is "concerned with actual as compared to legal innocence." *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Thus, to meet this standard, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier,* 477 U.S. at 496. "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In this case, Petitioner has offered no evidence, scientific or otherwise, showing his actual innocence. Therefore, Petitioner has not made an adequate showing to satisfy the fundamental miscarriage of justice exception. Accordingly, Petitioner's unexhausted claims should be dismissed as procedurally barred.

Moreover, as discussed further below (*see infra* at 19–22), Petitioner's unexhausted claims should be dismissed in any event, because they do not actually raise federal constitutional issues, and thus they are not cognizable on habeas review.

**B. *Standard of Review***

Where the state court has reached the merits of a claim, this Court must apply a deferential standard in reviewing that claim in a habeas proceeding. Specifically, this Court must adhere to the standard of review set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the relevant portion of which provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**\*8** 28 U.S.C. § 2254(d). In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court clarified the meaning of the "contrary to" and "unreasonable application" clauses of AEDPA Section 2254(d)(1). A state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent, *id.* at 405, or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result, *id.* at 406. An "unreasonable application" of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to the particular facts before it. *Id.* at 413. The Supreme Court has explained that "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. Thus, the writ may not issue simply because the state court decision is erroneous or incorrect; rather, the application must also be unreasonable. *Id.* at 411.

AEDPA Section 2254(d), however, only applies to the review of claims that have been "adjudicated on the merits" by the state court. 28 U.S.C. § 2254(d). The Second Circuit has held that the phrase "adjudicated on the merits" means "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001). Where the state court has rejected a claim on procedural grounds or has otherwise not reached the merits of the claim, this Court must review that claim *de novo. See Washington v.. Schriver,* 255 F.3d 45, 55 (2d Cir.2001).



_____ C. *Petitioner's Claims*

_____ 1. *Ineffective Assistance of Counsel*

_____ To the extent the state court adjudicated Petitioner's ineffective assistance of counsel claim on the merits on Petitioner's Section 440.10 motion, this Court must review that determination under AEDPA's deferential standard of review. Applying that standard of review, the Court should dismiss the claim.

The right to counsel in criminal prosecutions is grounded in the Sixth Amendment. Because the Constitution "envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results [,] ... 'the right to counsel is the right to the effective assistance of counsel.' " *Strickland v. Washington,* 466 U.S. 668, 685–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Counsel can deprive a criminal defendant of this right "simply by failing to render 'adequate legal assistance.' " *Id.* at 686 (citation omitted).

**\*9** In order for counsel to be deemed constitutionally "ineffective," however, counsel's conduct must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* Petitioner can demonstrate such ineffectiveness by showing both that: (1) counsel's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. The Court may reject an ineffective assistance of counsel claim for failure to satisfy either of these prongs of the *Strickland* standard, without reaching the other. *See id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *see also Morales v. United States,* 199 F.3d 1322 (Table), No. 98–3700, 1999 WL 1015641, at \*1 (2d Cir.1999) (court did not address "whether appellant's trial counsel was unreasonably deficient in his performance because any deficiency in this

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

Here, if Petitioner is resting his ineffective assistance claim on the contention that his trial counsel failed to challenge an alleged 72–hour delay between the time of Petitioner's arrest and arraignment, then Petitioner cannot meet the *Strickland* standard because he is relying on an incorrect factual premise. In ruling on Petitioner's Section 440.10 motion, the trial court found that, despite "apparent confusion" on the part of Petitioner, the record "clearly reveal[ed]" that Petitioner had been arraigned in a "timely manner." (*See* Resp. Mem. Ex. H.) Under AEDPA, this factual finding is "presumed correct" and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Not only has Petitioner failed to present any evidence to rebut this factual finding, but this Court's own review of the documentary record regarding Petitioner's arraignment reveals that Petitioner was initially arraigned on October 24, 1995, the day after he was arrested, and that he was represented by a lawyer at his arraignment. (*See* Resp. Aff., Exs. G and M.) FN8

FN8. In addition, Petitioner's trial attorney stated during the trial that Petitioner was arraigned on October 24, 1995. (Tr. at 161 .)

As this Court must accept as correct the state court's finding that there was no unreasonable delay in Petitioner's arraignment, it cannot be said that Petitioner's counsel acted unreasonably in failing to challenge the alleged delay. Nor can it be said that the state court's resulting rejection of Petitioner's ineffective assistance of counsel claim was contrary to, or an unreasonable application of federal law, under 28 U.S.C. § 2254(d). Accordingly, to the extent Petitioner is asserting such a claim here, it should be dismissed under AEDPA. FN9

FN9. From the language of Petitioner's claim, it may be that Petitioner is no longer challenging his counsel's failure to object to the supposed delay in his arraignment, but rather the deprivation of counsel during the alleged "critical" period of the delay. (*See* Pet. § 12(A) (asserting that Petitioner "did not speak with counsel until 72 hours after [his] initial arrest").) If this is the basis of Petitioner's current claim,

then his claim is unexhausted, as it is based on an argument that was never presented to the state courts. Further, for the reasons stated above in connection with Petitioner's other unexhausted claims, the claim is now procedurally barred. In any event, the claim would fail for lack of merit, even under a *de novo* standard of review. Under the Sixth Amendment, the right to counsel "attaches only at the initiation of adversary criminal proceedings ... and before proceedings are initiated, a suspect in a criminal investigation has no constitutional right to the assistance of counsel." *Davis v. United States,* 512 U.S. 452, 456–57, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *see also Ferguson v. Walker,* No. 00 Civ. 1356, 2002 WL 31246533 (S.D.N.Y. Oct.7, 2002) ("the right to counsel ... attaches only upon the initiation of adversary criminal proceedings, such as by formal charge, indictment or arraignment"). In this case, the record shows that adversary criminal proceedings were initiated against Petitioner with the filing of the felony complaint on October 24, 1995, the same day that counsel was appointed for Petitioner. (*See* Resp. Aff., Exs. G and M.) Thus, Petitioner was not, in fact, deprived of counsel.

_____ *2. Speedy Arraignment*

Petitioner also claims that the alleged 72–hour delay before his arraignment was itself a constitutional violation. Liberally construed, this claim could be read to suggest that the alleged delay implicated defendant's Sixth Amendment right to a speedy trial. *See Holmes v. Bartlett,* 810 F.Supp.2d 550, 561–62 (S.D.N.Y.1993) (analyzing claim by habeas petitioner of delay between arrest and arraignment as an alleged violation of the Sixth Amendment right to a speedy trial). As already discussed, however, the trial court found, and the record reflects, that Petitioner was actually arraigned within one day of his arrest. Under the circumstances, Petitioner can have no basis for arguing any constitutional violation.

**\*10** [3] Indeed, even if Petitioner were correct that 72 hours elapsed before he was arraigned, he would still have no grounds to complain that this violated a constitutional right. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

L.Ed.2d 101 (1972), the Supreme Court held that the following four factors must be considered in determining whether a defendant' Sixth Amendment right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) whether or not the defendant asserted his right; and (4) prejudice to the defendant. Id. at 530–33. The Court noted that "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Id. at 530. In this case, Petitioner bases his claim solely on the length of the alleged 72–hour period between his arrest and arraignment. This delay is not "presumptively prejudicial." See United States v. Vassell, 970 F.2d 1162, 1164 (2d Cir.1992) (suggesting that any delay over eight months is presumptively prejudicial, while a delay of less than five months is not); United States v. Ballam, 70 F.3d 1280, 1995 WL 710498 at *2 (9th Cir.1995) (text in Westlaw) (stating that "[t]he judicial consensus of how much time must go by before a delay is presumed prejudicial ranges from eight months ... to one year"); United States v. Pereira, 463 F.Supp. 481, 488 (E.D.N.Y.1978) (holding that a delay of 20 days was not presumptively prejudicial).

Moreover, in Williams v. Ward, 845 F.2d 374 (2d Cir.1988), the Second Circuit held that delays of 72 hours between arrest and arraignment in the New York City criminal justice system do not violate the right under the Fourth and Fourteenth Amendments to obtain a probable cause determination within a "brief" period of time after arrest. See id. (holding that "the procedural benefits provided to arrestees under New York City's arraignment system justify constitutionally arrest-to-arraignment periods of seventy-two hours in length"). Thus, if Petitioner's claim is based on the Fourth Amendment, it would fail under Williams.

For these reasons, Petitioner has not shown that the state court's rejection of this claim was contrary to, or involved an unreasonable application of federal law. See 28 U.S.C. § 2254(d). Accordingly, this claim should be dismissed.

_____ 3. Petitioner's Remaining Claims

Petitioner's last two claims relate to the conduct of the state grand jury proceedings. Specifically, Petitioner claims that (a) the original indictment against him was impermissibly amended, and (b) he was unfairly denied the opportunity to testify before the grand jury. (Pet. §§ 12(C) and D).) As discussed above (see supra at 10–13), these claims are unexhausted and procedurally barred. Further, they cannot be reviewed in this Court, as they do not implicate federal constitutional rights.

_____ a. Amendment of the Indictment

*11 [4] According to Petitioner, the assistant district attorney went to the grand jury with robbery charges on October 27, 1995, but then determined that robbery charges were not warranted. (See Pet. §§ 12(B) and (C).) On November 1, 1995, Petitioner was indicted on different charges, i.e. on one count each of first degree rape, sexual abuse, and second degree-burglary. (See Pet. § 12(C).) Based on these allegations, Petitioner contends that the indictment against him was improperly amended. (Id.) Respondent, however, asserts that Petitioner has misunderstood the relevant proceedings. (See Resp. Mem. at 15.) Respondent contends that, in claiming that the indictment "broaden [ed] and altered" the initial charges against him (Pet. § 12(C)), Petitioner must be referring to the fact that the felony complaint against him included a different charge (i.e. robbery) than the charges ultimately contained in the indictment (i.e. first degree rape, sexual abuse, and second-degree burglary. (See Resp. Mem. at 15.) Respondent asserts that the prosecution properly submitted to the grand jury the charges on which Petitioner was eventually indicted, and that the indictment itself was never amended. (Id.)

It appears that, in deciding Petitioner's Section 440.10 motion, the state court accepted Respondent's version of events. (See Resp. Mem. Ex. H (finding that "return of an indictment by the Grand Jury served to cure any alleged defect" in the original felony complaint).) Any such factual finding by the state court is presumed correct under AEDPA. 28 U.S.C. § 2254(e)(1). Yet regardless of whether the state court entirely resolved the relevant factual issue, Petitioner does not relate his claim to a federal constitutional violation (see Pet. § 12(C) (contending only that the indictment was amended), and therefore his claim is not cognizable on habeas review.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

It may be that Petitioner is attempting to argue, as he did in his Section 440.10 motion, that the purported amendment to his indictment violated his right "to be tried only on charges brought by the Grand Jury indictment." (See Resp. Aff., Ex. F, at 11–12 .) Yet if this is Petitioner's argument on habeas review, his claim still fails. The right to have state charges presented to a grand jury is a state-created right, not a federal right. Rodriguez v. Senkowski, No. 92 Civ. 5484, 1995 WL 347024, at *2 (E.D.N.Y. May 31, 1995) (rejecting challenge to a state trial court's amendment of an indictment). Accordingly, "any alleged impropriety in the amendment of the indictment is predicated on state law, and is therefore beyond this Court's review." Id.; see also Medina v. Herbert, No. 98 Civ. 1871, 1998 WL 799173 at *5 (S.D.N.Y. Nov. 16, 1998) ("In general, challenges to the sufficiency of a state indictment are not issues cognizable on habeas review.").

b. Deprivation of Right To Testify Before the Grand Jury

*12 [5] Petitioner finally claims that his due process rights were violated because he was never given the opportunity to testify before the grand jury. (Pet. § 12(D).) Once again, however, any alleged defects in the state grand jury process are not cognizable on habeas review. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir.1989) (holding that claims concerning state grand jury proceedings are foreclosed from habeas review because "any error in the grand jury proceeding was rendered harmless beyond reasonable doubt by the petit jury's guilty verdict"); Afflic v. New York, No. 01 Civ. 6152, 2002 WL 500373 (S.D.N.Y. Apr.3, 2002) ("Petitioner's claim that he was not advised of his right to appear before the Grand Jury does not present an issue of constitutional dimension, but merely one of state law"); McMoore v. Miller, No. 98 Civ.1915, 2002 WL 975305 at *9 (S.D.N.Y. Apr.19, 2002) (dismissing habeas claim based on petitioner's failure to testify before the grand jury because "[petitioner's] right to testify before a grand jury is based solely on state law, the wrongful denial of that right does not entitle him to a federal writ of habeas corpus") (emphasis in original).

As Petitioner's claim does not implicate a federal constitutional right, it cannot be reviewed in this Court, and should be dismissed.

CONCLUSION

For the foregoing reasons, I recommend that Petitioner's petition for a writ of habeas corpus be dismissed in its entirety. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States Courthouse, 500 Pearl Street, Room 1340, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 40 Centre Street, Room 631, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); IUE AFL–CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir.1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58 (2d Cir.1988); McCarthy v. Manson, 714 F.2d 234, 237–38 (2d Cir.1983).

S.D.N.Y.,2003.

Staley v. Greiner
Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Alberto MARTINEZ, Petitioner,
v.
Joseph J. COSTELLO, Superintendent, Mid–State
Correctional Facility, and Eliot Spitzer, Attorney
General of the State of New York, Respondents.
No. 03 Civ. 2763(GEG).

Jan. 5, 2004.

**Background:** Defendant convicted of criminal possession of a controlled substance in the second degree brought a pro se petition for a writ of habeas corpus.

**Holdings:** The District Court, Gorenstein, United States Magistrate Judge, held that:

(1) determination that defendant was not entitled to withdraw his guilty plea on the ground that it was unknowing was not unreasonable;

(2) defendant had no federal constitutional right to an evidentiary hearing on his motion to withdraw his guilty plea; and

(3) trial court did not violate defendant's right to counsel when it failed to appoint new counsel to represent defendant on his motion to withdraw the guilty plea.

Petition denied.

West Headnotes

**[1] Habeas Corpus 197 ☞ 475.1**

197 Habeas Corpus

197II Grounds for Relief; Illegality of Restraint
197II(B) Particular Defects and Authority for
Detention in General
197k475 Arraignment and Plea

197k475.1 k. In General. Most Cited Cases
State court's determination that defendant's "vague and conclusory allegations of innocence, [and] lack of comprehension" did not entitle him to withdraw his guilty plea, on the ground that it was unknowing, was not unreasonable, thus precluding habeas relief; statements defendant made during his plea allocution demonstrated that the plea was entered with full knowledge of the charge and the consequences of pleading guilty, and the statements he made during the plea allocution controlled over unexplained statements in his affidavit in support of a withdrawal motion. 28 U.S.C.A. § 2254(d).

**[2] Criminal Law 110 ☞ 274(1)**

110 Criminal Law

110XV Pleas
110k272 Plea of Guilty
110k274 Withdrawal
110k274(1) k. In General. Most Cited Cases
**Habeas Corpus 197 ☞ 475.1**

197 Habeas Corpus

197II Grounds for Relief; Illegality of Restraint
197II(B) Particular Defects and Authority for
Detention in General
197k475 Arraignment and Plea
197k475.1 k. In General. Most Cited Cases
Defendant had no federal constitutional right to an evidentiary hearing on his motion to withdraw his guilty plea, and thus, state appellate court's decision upholding the failure to hold such a hearing was not contrary to, or an unreasonable application of, clearly established Federal law, as required for habeas relief. 28 U.S.C.A. § 2254(d).

**[3] Criminal Law 110 ☞ 1828(1)**

110 Criminal Law

110XXXI Counsel
110XXXI(B) Right of Defendant to Counsel

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

110XXXI(B)9 Choice of Counsel
110k1824 Discharge by Accused
110k1828 Particular Cases
110k1828(1) k. In General. Most Cited Cases
(Formerly 110k641.10(2))

Trial court did not violate defendant's right to appoint new counsel to represent defendant on his motion to withdraw a guilty plea; the defendant failed to provide any explanation for attempting to withdrawal his plea when he was given a chance to speak before sentencing or through a pre-sentence motion, and there were no allegations that his attorney attempted to coerce him. U.S.C.A. Const. Amend. 6.

*OPINION AND ORDER*

GORENSTEIN, Magistrate J.

**\*1** Following a plea of guilty to one count of Criminal Possession of a Controlled Substance in the Second Degree in New York County Supreme Court, Alberto Martinez was sentenced as a second felony offender to a prison term of six years to life. He now brings this petition for writ of habeas corpus *pro se* pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of jurisdiction over this petition by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons below, the petition is denied.

I. *BACKGROUND*

In March 1998, Martinez was indicted for Criminal Possession of a Controlled Substance in the First Degree and related charges in connection with a drug sale turned shoot-out which occurred in Martinez's apartment. *See* Martinez's Appellate Brief, dated May 2001 ("App.Brief") (annexed to Petition for Writ of Habeas Corpus, filed April 22, 2003 (Docket # 2) ("Petition")), at 3; Plea: Tr. 3, 7–9. During this incident, Martinez was shot in the face and three other participants also sustained gunshot wounds. App. Brief at 3; Respondents' Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus, filed September 3, 2003 (Docket # 11) ("Resp.Opp."), at 2.

On August 19, 1999, Martinez appeared with counsel before the Honorable Ronald A. Zweibel of the New York County Supreme Court for a pre-trial hearing. *See* *generally* Transcript of Plea Hearing Conducted August 19, 1999 (Docket # 10). Martinez was represented by Alfredo Hernandez, a court-appointed lawyer. Petition at 1. Apparently, plea discussions had been ongoing over the entire one-and-a-half-year period since the case was first indicted. (Plea: Tr. 3). Defense counsel stated to the court that he had "had extensive conversations with Mr. Martinez" and that he had explained to Martinez that various people had made statements against him; Felix Pabon, a participant in the crime, would likely testify against him; cocaine had been recovered from outside Martinez's apartment; and his fingerprints had been lifted from one of the bricks of cocaine. (Plea: Tr. 3). If convicted as charged, Martinez faced a minimum sentence of fifteen years to life, (Plea: Tr. 2), and a maximum of twenty-five years to life, (Plea: Tr. 5). Nonetheless, defense counsel reported that Martinez had been "completely recalcitrant" in participating in the plea discussions. (Plea: Tr. 3).

As of August 19, 1999, all other individuals involved in the incident had pled guilty. (Plea: Tr. 4). The Assistant District Attorney stated on the record that she was offering Martinez a sentence of six years to life in return for a plea of guilty to Criminal Possession of a Controlled Substance in the Second Degree in full satisfaction of the indictment. (Plea: Tr. 3–4, 7). She made it clear that this was the best offer she was allowed to make and that the offer would be revoked as soon as the pre-trial hearing began. (Plea: Tr. 9). She explained her offer based on the facts that "this defendant arranged a drug deal for three kilos of cocaine, in a residential area.... As a result ... four people were shot.... He has three prior felony convictions." (Plea: Tr. 7–8).

**\*2** After consulting with Martinez, defense counsel reported to the court that Martinez was rejecting the offer and was prepared to proceed with the hearing. (Plea: Tr. 9). The first witness was called to the stand but before he could be sworn in, defense counsel asked the court to "hold on just a second" so he could consult with Martinez. (Plea: Tr. 10). Thereafter, Martinez's counsel stated that Martinez was withdrawing his plea of not guilty and entering a plea of guilty. (Plea: Tr. 10–11).

During the subsequent allocution, Martinez

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

acknowledged that he had discussed his case and plea with his attorney, that he understood he was waiving certain constitutional rights, and that he was pleading guilty of his own free will. (Plea: Tr. 11–12). The court asked him: "Are you pleading guilty because you are, in fact, guilty of this crime?" Martinez replied "Yes, sir." (Plea: Tr. 12).

The court asked Martinez if he understood that a plea had the same effect as if he had been convicted after a trial, to which Martinez responded that he did. (Plea: Tr. 12–13). Martinez also stated that he understood the charge he was pleading to and that no one had forced him to enter into the plea. (Plea: Tr. 13). The court then repeated the nature of the charge—Criminal Possession of a Controlled Substance in the Second Degree—and the following colloquy ensued:

THE COURT: It is alleged that the defendant[ ], Alberto Martinez[,] ... in the County of New York, on or about March 15th, 1998, knowingly and unlawfully possessed one or more preparations, compounds, mixtures and substances containing a narcotic drug; to wit, cocaine, and said preparations, compounds, mixtures and substances are of an aggregate weight of two ounces or more. Do you plead guilty to that charge?

THE DEFENDANT: Yes, sir.

(Plea: Tr. 13–14). The clerk officially recorded the plea and the case was scheduled for sentencing on September 1, 1999. (Plea: Tr. 14–15).

A few days later, Martinez filed a *pro se* motion to withdraw his plea that annexed an affidavit. *See* Notice of Motion, dated August 24, 1999, and Affidavit of Alberto Martinez, dated August 25, 1999 ("Martinez Aff.") (both annexed as Ex. A to Resp. Opp.). Both the Notice of Motion and affidavit were "fill-in-the-blank" forms inasmuch as lines appear where case-specific information, such as the defendant's name, docket number, and dates, needs to be filled in. Martinez filled in some of these lines but left blank a large space provided for him to fill in the specific facts supporting his motion. Martinez Aff. ¶ 5.

The affidavit form states that the affiant is "not fully aware of the circumstances involved when he made such

guilty plea," that he "plead [sic] guilty for reasons which are outside the record," that "he was unaware of the fact[ ] that he has a good meritorious defense to the prosecution," and that "he is not guilty of the offense." Martinez Aff. ¶¶ 4–7. The affidavit also contained a statement that "defendant ... was fully aware of the consequences of his plea of guilty." *Id.* ¶ 6. Martinez's counsel later explained that this was a typographical error and that Martinez meant he was *not* fully aware, as the context of the statement implies. *See* Sentencing: Tr. 4; App. Brief at 6 n. 3.

*3 On September 1, 1999, prior to sentencing, Judge Zweibel considered Martinez's motion to withdraw his plea. *See generally* Transcript of Hearing on Motion to Withdraw Plea & Sentencing Hearing Conducted September 1, 1999 (Docket # 9), at 2–8. Defense counsel indicated that the *pro se* motion "puts me in a situation where it would be a conflict of interest for me to remain on this case, an irreconcilable interest [sic]." (Sentencing: Tr. 3). He explained:

Anyway, I did not encourage this motion. I cannot join this motion in good conscience ... and I certainly wouldn't start to feel that I'm in a position to effectively argue such a motion considering a very extensive record that I made on the last date ... regarding the proof in this case, the consequences to the Defendant and what his options were....

So, I have not joined in this motion. This is a pro se motion. I don't know if it would be in conflict. Clearly, I cannot in good conscience argue this particular motion. I think my client stands to be seriously prejudiced if this motion were granted.

(Sentencing: Tr. 4–5). He further stated:

As I said, I feel that I'm at a conflict of interest with this particular motion to withdraw, and I think the Court should make a ruling as to whether to relieve me on this matter regarding this particular motion and have another attorney, maybe, make an effective argument for him on this matter, since I don't feel that I can make an argument, and it may be to his prejudice that he doesn't have an attorney to argue this withdrawal.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

(Sentencing: Tr. 6–7). The trial court declined to allow defense counsel to withdraw and to appoint Martinez a new attorney. (Sentencing: Tr. 7) ("I see no basis for you to be discharged on the basis of this motion that was presented to me. I see no merit whatsoever to this motion, and that application is denied to relieve you, counsel.").

With respect to the underlying motion to withdraw the plea, the trial court examined the papers submitted by Martinez and observed that "[t]hese are boiler plate papers that are prepared within the prison system." (Sentencing: Tr. 4). Further, the court found the assertions made in Martinez's affidavit to be "contrary to the full allocution he made the other day." (Sentencing: Tr. 5–6). The trial judge agreed with the prosecutor's statement that "[t]he only question [is] whether [the plea] was knowing and voluntary, and it was one of the most extensive plea allocutions and discussions on the record, prior to allocution, that I've had since I've been with the District Attorney's Office." (Sentencing: Tr. 7–8).

Before he was sentenced, Martinez was invited to address the court. He stated only: "I don't have any drugs, and I don't know anything about any drugs." (Sentencing: Tr. 11). He was then sentenced to the agreed-upon term of six years to life imprisonment. (Sentencing: Tr. 11).

In May 2001, through newly-assigned counsel, II, Martinez appealed his conviction, arguing that the "trial court erred in refusing to relieve counsel, who stated that he had a conflict of interest, and in summarily denying Mr. Martinez'[s] motion to withdraw his plea." App. Brief at 6. The conviction was unanimously affirmed by the Appellate Division, First Department, on December 11, 2001. *People v. Martinez,* 289 A.D.2d 70, 733 N.Y.S.2d 867 (1st Dep't 2001). The Appellate Division stated:

**\*4** The court properly exercised its discretion in denying defendant's motion to withdraw his guilty plea without a hearing and without appointing new counsel. Defendant was afforded a sufficient opportunity to present his assertions by means of his written motion, upon which he did not elaborate, and the court gave the motion proper consideration (*see People v. Frederick,* 45 N.Y.2d 520, 410 N.Y.S.2d 555, 382 N.E.2d 1332 [

(1978) ]; *People v. Colon,* 283 A.D.2d 193, 724 N.Y.S.2d 600 [ (1st Dep't 2001) ] ). The motion consisted of vague and conclusory allegations of innocence, lack of comprehension and ineffective assistance of counsel, which the court described as "boilerplate papers that are prepared within the prison system." The court, which had also accepted the guilty plea, was entitled to rely on the plea colloquy, which contradicted defendant's assertions.

*Id.* at 70, 733 N.Y.S.2d 867. Thereafter, Martinez sought leave to appeal to the New York Court of Appeals, which was denied on March 27, 2002. *People v. Martinez,* 97 N.Y.2d 757 (2002).

Martinez is currently incarcerated at the Mid–State Correctional Facility in Marcy, New York. He timely filed this petition for writ of habeas corpus arguing that he was deprived of his right to due process of law and his right to conflict-free counsel when the trial court summarily denied his motion to withdraw his guilty plea without appointing new counsel. *See* Petition at 2–3. Martinez exhausted his state law remedies by presenting the constitutional nature of his claims to each available level of the state courts. *See Daye v. Attorney Gen.,* 696 F.2d 186, 190–92 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

II. *DISCUSSION*

A. *Standard of Review*

Under the Antiterrrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Second Circuit has held that "adjudication on the merits" requires only that the state court base its decision on "the substance of the claim

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

advanced, rather than on a procedural, or other, ground." *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001). Furthermore, it is not necessary for the state court to refer to any federal claim or any federal law for AEDPA's deferential standard to apply. *Id.* at 312. In light of the Appellate Division's decision in this case, it is clear that Martinez's claims were adjudicated on the merits. Accordingly, the state court's decision will be reviewed under the standard laid out in 28 U.S.C. § 2254(d).

**\*5** In *Williams v. Taylor,* the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *Williams* also held that habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409.

B. *The Merits of Martinez's Claims*

Martinez argues that his Sixth and Fourteenth Amendment rights were violated when the state court denied his motion to withdraw his plea without appointing new counsel to represent him on the motion. *See* Petition at 2–3, 5–6. The petition appears to raise three claims: (1) the plea was entered unknowingly, in violation of the Due Process Clause; (2) Martinez was denied due process by the state court's failure to hold a hearing on his motion; and (3) the state court's failure to appoint new counsel to represent him on his motion denied Martinez his right to conflict-free counsel. Martinez bases his claims on the allegations in his affidavit and on defense counsel's statements that he had a conflict of interest with regard to

the allegations made in the motion and therefore could not argue the motion on Martinez's behalf. *See id.* at 4–5. Each claim is addressed separately.

1. *Unknowing Guilty Plea*

[1] The Due Process Clause of the Fourteenth Amendment requires that a guilty plea be knowingly and voluntarily entered. *E.g., Boykin v. Alabama,* 395 U.S. 238, 242–43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A plea is made knowingly when it is entered " 'with [an] understanding of the nature of the charge and the consequences of the plea.' " *Santobello v. New York,* 404 U.S. 257, 261 n. 1, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (quoting Fed.R.Crim.P. 11).

Martinez does not contend that the plea colloquy itself reflects an improperly entered plea. Rather, Martinez relies on his motion to withdraw his plea, in which he stated that he "plead [sic] guilty for reasons which are outside of the record ... and was [not] fully aware of the consequences of his plea of guilty and also ... he was unaware of the fact[ ] that he has a good meritorious defense." Martinez Aff. ¶ 6. He also stated that he was "not guilty of the offense(s) to which he plead [sic] guilty." *Id.* ¶ 7.

**\*6** Case law reflects that assertions of this kind are insufficient to negate the existence of a valid plea. As the Supreme Court has noted, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal...." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *accord Singh v. Kuhlman,* 1996 WL 337283, at \*3 (S.D.N.Y. June 19, 1996). As already noted, the affidavit containing these statements was a fill-in-the-blank form and Martinez never provided any details explaining—let alone substantiating—any of the conclusory assertions contained in the affidavit. Furthermore, the affidavit completely contradicts Martinez's own statements during his plea allocution. *Compare* Martinez Aff. ¶¶ 4, 6–7, *with* Plea: Tr. 11–15. As for Martinez's contention of having a "meritorious defense," Martinez Aff. ¶ 6, there is no indication anywhere in the record that such a defense actually existed. Indeed, defense counsel stated on the record before the plea:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

I don't think he has much of a defense on [this case], because, after all, he would have to testify in this case to make out the defense that he has and I've advised him he has a criminal record here and that will be made known to the jurors in this case, that he has a criminal record, and that will seriously effect his credibility, in addition to the proof that the prosecution has here, that he at some point possessed the narcotics in this case.

(Plea: Tr. 6). Martinez's motion to withdraw did not elaborate on any new possible defense he had discovered or indicate that he could substantiate his claim of innocence.

Martinez's statements during his plea allocution demonstrate that the plea was knowing in that it was entered with full knowledge of the charge and the consequences of pleading guilty. *See Santobello,* 404 U.S. at 261. The statements Martinez made during the plea allocution control over the unexplained statements in his affidavit. *See Singh,* 1996 WL 337383, at *3. The state court's determination that Martinez's "vague and conclusory allegations of innocence, [and] lack of comprehension" were nothing more than "boilerplate" and "contradicted defendant's assertions," *Martinez,* 289 A.D.2d at 70, 733 N.Y.S.2d 867, was neither contrary to, nor did it involve an unreasonable application of, any clearly established federal law.

2. *Motion to Withdraw Guilty Plea*

[2] The next question raised by Martinez is whether he was entitled to an evidentiary hearing on his motion to withdraw his guilty plea. A recent case from the Second Circuit, *Hines v. Miller,* 318 F.3d 157 (2d Cir.), *cert. denied,* 538 U.S. 1040, 123 S.Ct. 2089, 155 L.Ed.2d 1075 (2003), is almost precisely on point. In *Hines,* the petitioner pled guilty in state court and thereafter sought to withdraw his plea, claiming that his attorney coerced him into accepting the plea and that he was innocent of the crime. *Id.* at 159. Defense counsel asked to be relieved and for new counsel to be appointed to represent the petitioner on the motion. *Id.* The trial court, however, denied the *pro se* motion without holding a hearing and without appointing new counsel, noting that the petitioner had inculpated himself when he entered the plea and stated

during the plea allocution that no one had forced him to plead guilty. *Id.*

*7 In seeking federal habeas review of his conviction, the petitioner in *Hines* argued that the failure to hold a hearing on his motion to withdraw his plea violated due process. 318 F.3d at 161. The Second Circuit held, however, that "a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea." *Id.* at 162; *accord Cosey v. Walsh,* 2003 WL 1824640, at *3 (S.D.N.Y. Apr.8, 2003); *Thomas v. Senkowski,* 968 F.Supp. 953, 956 (S.D.N.Y.1997). Thus, "the failure to hold an evidentiary hearing ... does not offend a deeply rooted or 'fundamental' principle of justice." *Hines,* 318 F.3d at 162 (quoting *Medina v. California,* 505 U.S. 437, 445, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992)). The failure to hold a hearing is especially understandable in Martinez's case where petitioner "did nothing more than contradict his own statements at the time he entered the plea," *Hutchings v. Herbert,* 260 F.Supp.2d 571, 581 (W.D.N.Y.2003).

In light of the lack of a federal constitutional right to an evidentiary hearing in this situation, the Appellate Division's decision upholding the failure to hold such a hearing was not "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).

3. *Ineffective Assistance of Counsel/Motion to Substitute Counsel*

[3] Martinez also argues that the trial court violated his right to counsel when it failed to appoint new counsel to represent him on his motion to withdraw his plea. *See* Petition at 5–6. *Hines* considered the same issue in the context of petitioner's argument that he was denied effective assistance of counsel by his attorney's failure to represent him on his motion to withdraw his plea. 318 F.3d at 162–64. As is true here, the petitioner in *Hines* based his motion in part on the ground that his attorney had an actual conflict of interest. *Id.*

The *Hines* court noted that such claims can be analyzed two ways: either (1) "as a claim that petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea," or (2) "as a claim that petitioner was denied the effective

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

assistance of counsel because an actual conflict of interest adversely affected counsel's performance." *Id.* at 163 (citations omitted). The Supreme Court has not clarified which analysis courts should apply, but *Hines* observed that the Second Circuit has applied the ineffective-assistance-of-counsel analysis and has "generally decided the case on the basis of whether the underlying motion had sufficient merit to create an actual conflict of interest or present a 'plausible alternative defense strategy.' " *Id.* (citations omitted); *see, e.g., United States v. Davis,* 239 F.3d 283, 285–88 (2d Cir.2001); *Lopez v. Scully,* 58 F.3d 38, 41–43 (2d Cir.1995); *Fluitt v. Superintendent, Green Haven Corr. Facility,* 480 F.Supp. 81, 86 (S.D.N.Y.1979) (Weinfeld, J.). *Hines* also noted that "numerous reviewing courts, irrespective of the analysis employed, have affirmed the denial of a withdrawal motion despite the failure to appoint new counsel." 318 F.3d at 164 (citing cases). *Hines* ruled against the petitioner in that case, holding that there was "no basis for concluding ... that the Appellate Division's decision here constituted an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States." *Id.*

**\*8** *Hines* governs the instant case. If anything, there was more information in the record in *Hines* as to the petitioner's explanation for attempting to withdrawal his guilty plea. *See* 318 F.3d at 159. Here, there is no such information and Martinez failed to provide any when he was given a chance to speak before sentencing or through the pre-sentence motion. In addition, unlike *Hines,* there are no allegations that Martinez's attorney attempted to coerce him. What is left is a patently meritless submission that obviously could not meet the standard of a motion with "sufficient merit to create an actual conflict of interest or present a 'plausible alternative defense strategy,' " *Hines,* 318 F.3d at 163. Thus, the trial court properly concluded that there was no need to appoint new counsel.

Because the Appellate Division's determination upholding this decision was not contrary to, or an unreasonable application of, any clearly established federal law, it must be upheld.

*Conclusion*

For the foregoing reasons, the petition is denied. In addition, because Martinez has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). The Court also certifies, pursuant to 28 U.S.C.1915(a)(3), that any appeal from the judgment would not be taken in good faith.

The Clerk is requested to enter judgment and close this case.

S.D.N.Y.,2004.

Martinez v. Costello
Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.